**STEWART–WARNER CORPORATION, Plaintiff-Appellee,**

v.

**WESTINGHOUSE ELECTRIC CORPORATION, Defendant,**

and

**Canadian Westinghouse Company, Ltd., Intervenor-Defendant-Appellant.**

No. 92, Docket 28292.

United States Court of Appeals Second Circuit.

Argued Oct. 23, 1963.

Decided Dec. 20, 1963.

Certiorari Denied March 9, 1964.

See 84 S.Ct. 800.

---

824

Augustus G. Douvas, Chicago, Ill. (Edwin T. Bean and Bean, Brooks, Buckley & Bean, Buffalo, N. Y., on the brief), for plaintiff-appellee.

Ralph H. Swingle, Pittsburgh, Pa. (Charles K. Rice and Jaeckle, Fleischmann, Kelly, Swart & Augspurger, Buffalo, N. Y., on the brief), for intervenor-defendant-appellant.

Before LUMBARD, Chief Judge, and MEDINA and FRIENDLY, Circuit Judges.

LUMBARD, Chief Judge.

Canadian Westinghouse Company Ltd. (Canadian), an intervenor-defendant in a patent infringement suit brought by Stewart-Warner Corporation against Canadian's parent, Westinghouse Electric Corporation, appeals from an order of the United States District Court for the Western District of New York, dated April 15, 1963, which dismissed certain of Canadian's counterclaims against Stewart-Warner, for patent infringement and unfair competition, and also struck certain of Canadian's affirmative defenses. As we are of the opinion that the district court abused its discretion in dismissing such counterclaims and striking such defenses we reverse the judgment of that court.

To summarize the matters in dispute, we take as true the allegations of Canadian in its moving papers for intervention and in its answer. During some years prior to 1959 Canadian, a corporation with its principal place of business in Hamilton, Ontario, developed a photoelectric line tracer. Among its employees were Frans Brouwer, a product development engineer, Derek Redman, a senior engineering assistant, and John Cheverton, another engineer. Canadian alleges that Brouwer and Cheverton were the inventors of the basic device; in July 1957 they assigned their interests to Canadian, including "all variations thereof, and improvements thereon" which they might thereafter make. One patent application of Cheverton and Brouwer resulted in United States patent #2,933,612, issued in April 1960; and an improvement invented by Brouwer resulted in patent #3,017,552, issued in January 1962. Both patents are owned by Canadian. The photoelectric line tracing equipment manufactured by Canadian is purchased by Westinghouse, its parent by virtue of 76 per cent ownership of Canadian's stock, and is distributed and resold in the United States by Westinghouse. Canadian under its contracts with Westinghouse is obligated to save Westinghouse harmless from patent infringement claims and is required to pay any patent litigation expenses.

Canadian alleges that Stewart-Warner, a Virginia corporation with its principal place of business in Chicago, was not engaged in the manufacture and sale of photoelectric line tracing equipment

prior to 1959. In that year it conspired with Brouwer and Redman and Edward L. McDonald, Canadian's senior sales assistant, to obtain the benefits of Canadian's experience, know-how, designs, customers and markets. Stewart-Warner then hired away McDonald and Brouwer in September 1959, and Redman followed in December. Obviously it was only a matter of time before the parties would be embroiled in litigation somewhere in the United States.

Stewart-Warner served its complaint on Westinghouse on July 19, 1961, charging infringement of McLennan patent #2,489,305, issued on November 29, 1949, for an invention relating to a "Photoelectric Curve Following Device" which it had acquired by assignment. Venue was laid in the Western District of New York, where Westinghouse has a regular place of business and where it was alleged that it had committed acts of infringement. Stewart-Warner sought a preliminary and final injunction against further infringement by Westinghouse "and those controlled by" Westinghouse and an accounting for profits and damages, to be trebled for wilfulness. An amended complaint, served on November 2, 1961, added two counts alleging notice to Westinghouse, and knowing contributory infringement by the sale of photoelectric line scanning heads and "specially adapted electronic amplifier circuitry which constitute a material part of the patented invention, knowing the same to be especially made or especially adapted for use in an infringement" of its patent.

Westinghouse's answer denied the validity of the McLennan patent and denied infringement and contributory infringement. It admitted that Stewart-Warner had written Westinghouse asserting infringement of the McLennan patent by equipment purchased by Westinghouse from Canadian. It also asserted as affirmative defenses that McLennan was not the inventor or the first or sole inventor of the claimed invention; that the claimed invention had been previously patented or described, that it had been

practiced and that any differences over the prior art, claimed by McLennan, lacked invention as they were obvious to one skilled in the art. Finally, it alleged that Stewart-Warner came into court with unclean hands by reason of having hired Brouwer, Redman and McDonald away from Canadian. Stewart-Warner's motion to strike these latter allegations was denied in May 1962.

On February 9, 1962, Canadian moved to intervene as a defendant and it attached its proposed answer, which was substantially the same as Westinghouse's answer with respect to the infringement and validity of the McLennan patent, and acts of unfair competition, but it added allegations of additional acts of unfair competition directed against Canadian.

Canadian's proposed answer also counterclaimed for a declaratory judgment that the McLennan patent was invalid, unenforceable, and not infringed. A second counterclaim was based upon Canadian's allegations of unfair competition. Still another counterclaim charged infringement by Stewart-Warner of the two patents originally issued to Cheverton and Brouwer and to Brouwer alone and subsequently assigned to Canadian. Canadian's counterclaims asked the usual relief of injunction, damages for unfair competition, and an accounting for profits and treble damages for wilful infringement of its two patents.

After hearing argument, Judge Henderson on February 23, 1962, granted leave to Canadian to intervene and received its answer and counterclaims. Several months later, in June 1962, Stewart-Warner moved to dismiss Canadian's counterclaim for infringement, its counterclaim for declaratory judgment insofar as it related to the new allegations of unfair competition, and its counterclaim for unfair competition. It also moved to strike those of Canadian's affirmative defenses which related to the additional allegations of unfair competition.

Ten months later, on April 15, 1963, Judge Henderson granted Stewart-Warner's motion without stating any rea-

son for so doing. The grounds upon which Stewart-Warner had moved were that the counterclaims for infringement and unfair competition "improperly attempt to enlarge the issues of the main action and fail to state claims upon which relief can be granted. * * *" citing Chandler & Price Co. v. Brandtjen & Kluge, Inc., 296 U.S. 53, 56 S.Ct. 6, 80 L.Ed. 39 (1935), and that "venue is improper because plaintiff neither resides, is doing business, nor committed acts of infringement in the Western District of New York." Stewart-Warner moved to strike Canadian's allegedly improper affirmative defenses because "these allegations improperly attempt to enlarge the issues of the main action," and they are "immaterial * * * to any defense to the claims in the Amended Complaint."

■ The dismissal of Canadian's prayers for injunctive relief alleged in its counterclaims for patent infringement and unfair competition is appealable under 28 U.S.C. § 1292(a) (1). General Electric Co. v. Marvel Rare Metals Co., 287 U.S. 430, 433, 53 S.Ct. 202, 77 L.Ed. 408 (1932); Telechron, Inc. v. Parissi, 197 F.2d 757 (2 Cir. 1952); Cutting Room Appliances Corp. v. Empire Cutting Machine Co., 186 F.2d 997 (2 Cir. 1951); Switzer Bros., Inc. v. Locklin, 207 F.2d 483 (7 Cir. 1953), cert. denied, 347 U.S. 912, 74 S.Ct. 477, 98 L.Ed. 1069 (1954). The striking of the affirmative defenses and the portion of the counterclaims for declaratory judgment which assert those affirmative defenses is so inextricably interwoven with those portions of the order which are clearly appealable that we shall proceed to consider the merits of the entire order.

■ There is no doubt of the propriety of Canadian's intervention as the manufacturer and vendor to Westinghouse and others of the equipment alleged by Stewart-Warner to be an infringement of its McLennan patent. Chandler & Price Co. v. Brandtjen & Kluge, Inc., 296 U.S. 53, 56 S.Ct. 6, 80 L.Ed. 39 (1935); Yale & Towne Mfg.

Co. v. Manning, Maxwell & Moore, Inc., 91 F.Supp. 106 (S.D.N.Y.1950); Western States Machine Co. v. S. S. Hepworth Co., 2 F.R.D. 145 (E.D.N.Y.1941). Thus the remaining and critical question is whether Canadian, being a proper party to intervene in the suit, may assert other related claims against Stewart-Warner.

The order of the district court cannot be sustained on any view of the law. Since the district judge did not state any reason for his decision, we proceed to examine the various grounds offered by Stewart-Warner in support of its motion. First, Stewart-Warner maintains that Canadian's counterclaims and certain of its affirmative defenses would improperly enlarge the field of litigation between Stewart-Warner and Westinghouse. We do not agree.

■ The issues between Stewart-Warner and Canadian and Westinghouse ought to be settled in one forum and in one suit. The charges and countercharges involve the validity of three patents in the field of photoelectric line scanning and line tracing equipment, whether any party has infringed the patent rights of another, and the legality of certain competitive acts. In determining whether Westinghouse's equipment infringes the McLennan patent, the district judge would necessarily gain the understanding of that machinery which would be required for an adjudication of Canadian's claims of infringement of two patents which allegedly describe substantially similar equipment. Moreover, since the prior art, according to Westinghouse's answer, dates back to 1934, the district judge who heard the original claim would perforce be in a far better position to dispose of Canadian's counterclaims than would a judge totally unfamiliar with the entire field of photoelectric line scanning and tracing equipment. Economy of judicial time, expense to the parties, the time of witnesses, and every consideration for the proper and expeditious settlement of disputes impel us to a conclusion which would not limit the parties at the outset to one phase of a controversy which has continued

over some years and which almost certainly will be disposed of by the federal courts. The counterclaims and affirmative defenses which allege acts of unfair competition, although not directly related to the charges of patent infringement, are an integral part of the chronological background which underlies all aspects of the patent infringement charges. There would be little point in permitting adjudication of Canadian's patent infringement claims and yet prohibiting litigation of unfair competition claims which find their origin in the alleged acts whereby Stewart-Warner was able to manufacture and sell the infringing devices.

The whole tenor and framework of the Rules of Civil Procedure preclude application of a standard which strictly limits the intervenor to those defenses and counterclaims which the original defendant could himself have interposed. Where there exists a sufficiently close relationship between the claims and defenses of the intervenor and those of the original defendant to permit adjudication of all claims in one forum and in one suit without unnecessary delay—and to avoid as well the delay and waste of judicial resources attendant upon requiring separate trials —the district court is without discretion to deny the intervenor the opportunity to advance such claims. In the first instance, the district court's analysis must be accorded great weight. But where, as here, the record makes manifest the desirability of bringing the claims of all parties within the ambit of one litigation, we are compelled to reverse the district court's order.

We place no emphasis upon the fact that the district judge first permitted Canadian to intervene and later granted the motion to dismiss and strike parts of a counterclaim which it had earlier received. What the court could do at the time when intervention was sought it could do later, especially as there is no showing that any prejudice resulted from later reconsideration of the question.

Chandler & Price Co. v. Brandtjen & Kluge, Inc., 296 U.S. 53, 56 S.Ct. 6, 80 L.Ed. 39 (1935), and the progeny it has spawned are principally relied upon by the appellee. But these cases lend little support to its cause. In Chandler the counterclaim related to a patent owned by the intervenor and in no way related to the patent claim of the plaintiff. Moreover, the original defendant in that case, as a solitary consumer of the allegedly infringing device, had no interest whatsoever in the controversy between the plaintiff and the intervenor whereas here the defendant, as a distributor of the intervenor's equipment, and the intervenor have closely parallel and related interests. In any event, to whatever extent Chandler may look the other way, the decision in that case was rendered prior to the Supreme Court's enactment in 1938 of the Federal Rules. The Rules, as we have indicated, were designed to permit the speedy and inexpensive litigation of controversies and to maximize the expenditure of judicial resources wherever possible.[1] Our disposition of this case does no more than aid in the effectuation of this scheme. Cf. Switzer Bros., Inc. v. Locklin, 207 F.2d 483 (7 Cir. 1953), cert. denied, 347 U.S. 912, 74 S.Ct. 477, 98 L.Ed. 1069 (1954).

Stewart-Warner having chosen to bring the suit in the Western District of New York, we can see no objection to having all these matters passed

1. We have in mind particularly Rule 13, which permits the interposition of compulsory and permissive counterclaims; Rule 14, which relates to third-party practice; Rule 22, which permits interpleader, and Rule 24, which permits intervention of right and permissive intervention. While it would be highly undesirable to construe Rules 13 and 24 to permit a permissive intervenor to interpose all permissive counterclaims—however unrelated to the original litigation— the rules we have cited clearly manifest the spirit of modern federal procedure not unduly to restrict the scope of litigation among parties whenever consistent with a speedy and just determination of the controversy.

upon by that court. The suit was in essence brought against Canadian as well as against Westinghouse and surely it was brought with full knowledge on Stewart-Warner's part that Canadian would probably intervene. Thus Stewart-Warner has waived the objection to venue which it advanced as a second ground in support of its motion and which it otherwise would have by reason of its not doing business in the Western District and so far as the record shows not having committed acts of infringement therein. Of course, the district court may deny an intervenor the opportunity to raise permissive counterclaims wholly unrelated to the litigation between the plaintiff and the original defendant. But where, as here, because of the interrelationship of the plaintiff's and the intervenor's claims the interposition of counterclaims may properly be permitted no real prejudice can result to the plaintiff from the denial of his objection to venue. See 3 Moore, Federal Practice 45.

Stewart-Warner's final objection, that Canadian's counterclaims do not state claims upon which relief can be granted, is on its face without substance.

The order of the district court is accordingly reversed.

FRIENDLY, Circuit Judge (dissenting).

My brothers' ruling that the order appealed from is an interlocutory order refusing an injunction within 28 U.S.C. § 1292(a) needlessly extends federal appellate jurisdiction over mere practice orders, at a time when increased pressures both in the district courts and in the courts of appeals make this peculiarly undesirable.

From the standpoint of authority, decision depends on whether the case is attracted by General Electric Co. v. Marvel Rare Metals Corp., 287 U.S. 430, 433, 53 S.Ct. 202, 77 L.Ed. 408 (1932), Cutting Room Appliances v. Empire Cutting Machine Co., 186 F.2d 997 (2 Cir. 1951), and Telechron, Inc. v. Parissi, 197 F.2d 757 (2 Cir. 1952), sustaining the appealability of the orders there under review, or by National Machinery Co. v. Waterbury Farrel Foundry & Mach. Co., 290 F.2d 527 (2 Cir. 1961), denying it.[1] In National Machinery, also a patent suit, the defendant sought leave "to amend its answer so as to assert permissive counterclaims arising out of two patents similar to those on which the plaintiff brought suit"—a request similar to that of Canadian Westinghouse here. Judge Anderson denied leave on the ground that injection of these claims would unfairly prejudice the plaintiff in getting its case to trial. We held that when a refusal to broaden an action to include a claim for an injunction is based neither on the merits nor on a supposed lack of jurisdiction or improper venue, but solely "on the wisdom of consolidating certain claims for trial," it is "not the kind of refusal of an injunction which permits interlocutory review by the Court of Appeals under 28 U.S.C. § 1292(a) (1)." I see no tenable basis for refusing to apply the principle of that decision to a refusal, on similar grounds,[2] to allow

---

1. Since in National Machinery we expressly declined to follow the lead of Switzer Bros., Inc. v. Locklin, 207 F.2d 483 (7 Cir. 1953), cert. denied, 347 U.S. 912, 74 S.Ct. 477, 98 L.Ed. 1069 (1954), cited by my brothers, I deem it unnecessary to discuss that case or the two Ninth Circuit cases to the same effect which we mentioned. The latter have been at least qualified, if not overruled sub silentio, by Jorgensen Bros. v. Commerce-Pacific, Inc., 294 F.2d 768 (9 Cir. 1961).

2. Although it would have been better if Judge Henderson had specified on which

of the three grounds stated in Stewart-Warner's motion he was acting, I think it plain, as my brothers also seem to do, that he was relying on improper enlargement of the issues. No basis was presented from which he could possibly have concluded that the patent complaints failed to state claims upon which relief could be granted, and his striking of affirmative defenses demonstrates that he could not have been relying on the argument as to venue—an argument so thoroughly blasted by the General Electric decision, supra, and many others that it ought not to have been made.

an intervenor under F.R.Civ.Proc. 24(b) to seek relief by injunction for patent infringement and unfair competition. If anything, in the light of the wide discretion of the trial court long recognized with respect to permissive intervention, see 4 Moore, Federal Practice ¶¶ 24.10 [4], 24.15 (1963 ed.), this case is *a fortiori*—particularly in view of my brothers' sound position that we ought not regard the issue differently than if the district judge had struck the challenged portions of the proposed answer as a condition to granting leave to intervene.

Appealability must turn on the nature of the order—not on the fact that there may have been stronger reasons for what Judge Anderson did in National Machinery than for what Judge Henderson did here. The distinction taken in National Machinery was between a "refusal" based on an allegedly erroneous conclusion that the law does not permit the claim for an injunction to be heard in the action (as in General Electric, Cutting Room Appliances and Telechron), and one based on alleged abuse of a discretionary power over the scope of the action. Where the order is of the former type, the danger of serious harm from the court's erroneous belief in the existence of a legal barrier to its entertaining a claim for an injunction has been thought to outweigh the general undesirability of interlocutory appeals.[3] The very fact that the second type of order hinges on the trial court's discretion is itself an indication that such orders, relating primarily to convenience in litigation, carry a lesser threat of harm. Just as the scope of review of discretionary orders is narrowed, so also

should the occasions for appellate interference be limited. While a "refusal" of the first type will generally remit the party seeking an injunction either to a different district or even to a different system of courts, a discretionary refusal will often require no more than the filing of a separate action in the same courthouse. Such an order does not become appealable merely because, as here, circumstances peculiar to the parties will result in the applicant's having to bring the new proceeding in another district. That, at least, is what we said in the National Machinery case, 290 F.2d 528, where, as examination of the record indicates, precisely that situation seems to have been presented.[4] Unless we are prepared to overrule that decision, this appeal must thus be dismissed for want of jurisdiction.

For reasons already indicated in part, I think the National Machinery decision was sound, and that failure to enforce the distinction there made will expand a narrow exception to the final judgment rule, intended for cases of true hardship, to include mere practice orders simply because a pleading contains the talismanic word "injunction" and although the pleader had no intention of seeking interlocutory relief.[5] Reference to history is instructive as to the Congressional purpose. In the Evarts Act, the sole exception to the final judgment rule was "where, upon a hearing in equity * * an injunction shall be granted or continued by an interlocutory order or decree * * *" 26 Stat. 828 (1891). In such cases the court had brought its force to bear, and the need for immediate appeal was obvious. Four years later the exception was broadened to include cases

---

3. Such an order may likewise have important precedential effect.

4. The plaintiff was an Ohio corporation with its principal place of business there. The proposed amended answer did not assert any circumstances that would have allowed the defendant to sue for patent infringement in Connecticut under 28 U.S.C. § 1400(b)—even if, which seems questionable, process could have been served there upon the plaintiff.

5. That is the case here. Canadian Westinghouse had suffered the alleged unfair competition by Stewart-Warner to go on for three years before it filed the proposed counterclaim, and temporary injunctions in suits for infringement of electronic patents must be the rarest of rare birds.

"where, upon a hearing in equity * *, an injunction shall be granted, continued, refused, or dissolved by an interlocutory order or decree or an application to dissolve an injunction shall be refused * * *," 28 Stat. 666–667 (1895). This was because the implications of "the lack of all review over the action of a single judge in denying interlocutory injunctions" "had not been adequately considered," Frankfurter and Landis, The Business of the Supreme Court, 108–09 (1928); although the language is broader, as the General Electric case was later to hold, it seems rather plain that Congress was thinking primarily of the case where erroneous denial of a *temporary* injunction may cause injury quite as irreparable as an erroneous grant of one. After a retreat to the original wording in 1900, 31 Stat. 660, the 1895 version was restored in § 129 of the Judicial Code of 1911, 36 Stat. 1134. The reference to "a hearing in equity"—strongly suggesting the pressing of a demand for interlocutory relief—has suffered drafting erosion that has tended to obscure the original aim. The words "in equity" were dropped in 1925 when the section was broadened to include orders modifying or refusing to modify injunctions, 43 Stat. 937, but the omission "was not intended to remove that limitation." Schoenamsgruber v. Hamburg American Line, 294 U.S. 454, 457 fn. 3, 55 S.Ct. 475, 476–477, 79 L.Ed. 989 (1935); Baltimore Contractors, Inc. v. Bodinger, 348 U.S. 176, 180 fn. 6, 75 S.Ct. 249, 99 L.Ed. 233 (1955). Then the words "upon a hearing" fell by one of those unexplained changes in the 1948 revision of the Judicial Code, 62 Stat. 929, which we have been wisely instructed to disregard. Fourco Glass Co. v. Transmirra Prod. Corp., 353 U.S. 222, 227–228, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957).

The Supreme Court has characterized this history of the injunction exception to the final judgment rule as reflecting "a developing need to permit litigants to effectually challenge interlocutory orders of serious, perhaps irreparable, consequence." Baltimore Contractors, Inc.

v. Bodinger, supra, 348 U.S. at 181, 75 S.Ct. at 252–253, 99 L.Ed. 233. An order granting or denying a request for a temporary injunction fits that description. So does an order striking a claim for injunctive relief on the merits or on grounds of jurisdiction or venue since, as said in a case cited in General Electric, 287 U.S. at 433, 53 S.Ct. at 203–204, 77 L.Ed. 408, "the greater includes the less." Naivette, Inc. v. Philad Co., 54 F.2d 623 (6 Cir. 1931). Discretionary practice orders designed to avoid undue delay or confusion in the course of a particular trial do not rise to that level; a determination that a party seeking permissive intervention must press claims for injunctive relief in an action of its own presents no compelling need for interlocutory review.

If we had jurisdiction of the appeal, I would affirm. My brothers say that where the relationship between the claims and the defenses of the intervenor and those of the original defendant ·is sufficiently close to permit adjudication of all claims in one suit "without unnecessary delay," a district judge has no discretion to refuse to allow an intervenor to advance them. But "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties" is precisely the question which Rule 24(b) entrusts to the trial judge's discretion in deciding whether to permit the entry of an applicant whose "claim or defense and the main action have a question of law or fact in common." The patents that Canadian Westinghouse wished to bring into the case were not patents that would have to be considered as part of the prior art; the applications for them were made some ten years after plaintiff's patent was issued and plaintiff contended with substantial basis that, however much the district judge would necessarily learn of the art in passing upon the plaintiff's claim, litigation of the validity and infringement of these later patents would enormously increase the length and complexity of the trial. Although there may have been less warrant for striking the

unfair competition claims, this also seems to lie within the discretion of the trial judge, who may have been impressed with the intervenor's slowness in asserting these, see fn. 5, and with the effect of a judgment on the claims he allowed to remain. Refusal by one of the two judges in this busy court, taking into consideration the interests of the plaintiff as F.R.Civ.Proc. 24(b) required, to assume the additional days of trial and of post-trial study needed to dispose of intervenor's counterclaims does not become an abuse of discretion merely because it may require the intervenor to seek out the plaintiff—neither of them being without resources—in another forum and thereby in the end perhaps use more professional and judicial time.