**Nancy Anne SPANGLER et al.,
Plaintiffs,**

v.

**UNITED STATES of America,
Appellant-Intervenor,**

v.

**PASADENA CITY BOARD OF EDUCATION et al., Appellees.**

**No. 24101.**

United States Court of Appeals
Ninth Circuit.

Aug. 28, 1969.

Gary J. Greenberg (argued), John N. Mitchell, Atty. Gen., U.S.A., Jerris Leonard, Asst. Atty. Gen., Civil Rights Div., David L. Norman, Deputy Asst. Atty. Gen., Merle W. Loper, Atty., Dept. of Justice, Washington, D. C., Wm. Matthew Byrne, Jr., U. S. Atty., James Stotter, Asst. U. S. Atty., Los Angeles, Cal., for appellant.

John P. Pollock (argued), of Pollock & Palmer, Boyko & Simmons, Los Angeles, Cal., for appellees.

Before MERRILL and CARTER, Circuit Judges, and THOMPSON,* District Judge.

JAMES M. CARTER, Circuit Judge:

This case started out as a class action brought by negro students and parents of negro students to desegregate the three public high schools in Pasadena, California, and was brought on behalf of the plaintiffs "and of all similarly situated students enrolled in one of the three high schools." Before an answer had been filed by the Pasadena City Board of Education and the three members of the Board who were named defendants (hereafter the appellees), the United States moved to intervene as a party plaintiff under Sec. 902 of the Civil Rights Act of 1964, Pub.Law 88–352, Title IX § 902, Act of July 2, 1964, 78 Stat. 266, 42 U.S.C. § 2000h–2, and the motion was granted. In summary, the complaint in intervention of the United States brought into the case the entire Pasadena Public School system, containing 28 elementary, 5 junior high schools, 3 senior high schools and 2 special schools. The complaint in intervention prayed for an injunction, enjoining the appellees from discrimination upon the basis of race in the operation of the Pasadena School district and from failing to adopt and implement a plan for the elimination of discriminatory practices.

The appellees then moved to strike the allegations in the complaint in intervention, concerning the elementary, junior high schools and special schools, and the motion was granted. It is from this order that the government appeals. The district court added to its order, striking from the complaint in intervention, the statement that the order "is granted without prejudice to the right of the intervenor to urge the matter again."

---

* The Honorable Bruce R. Thompson, United States District Judge for the District of Nevada, sitting by designation.

## 1244

### THE QUESTIONS PRESENTED

This appeal presents the following questions:

1. Did the district court err in restricting the government's complaint in intervention under Sec. 902 to the scope of plaintiffs' complaint, thereby precluding the government from seeking relief from racial discrimination in the entire operation of the appellees' school system?

2. Is the district court's order, striking portions of the complaint in intervention, appealable?

### I.

### DID THE COURT ERR IN STRIKING FROM THE COMPLAINT IN INTERVENTION?

 The controversy turns around the meaning of the last sentence in Sec. 902 of the Civil Rights Act of 1964, 42 U.S.C. § 2000h–2, reading: "In such action the United States shall be entitled to the same relief as if it had instituted the action." The government cites legislative history to sustain its position. We do not find the legislative history to be too significant. " * * * [T]his is a case for applying the canon of construction of the wag who said, when the legislative history is doubtful, go to the statute." Mr. Justice Frankfurter in Greenwood v. United States (1956) 350 U.S. 366 at 374, 76 S.Ct. 410 at 415, 100 L.Ed. 412.

We do not read this sentence as a restriction upon the rights of the United States to relief. The sentence certainly does not limit the United States, as the appellees contend, to the relief asked for by the plaintiff.

Had the Attorney General instituted an action in behalf of the United States under Sec. 407(a) of the Civil Rights Act of 1964, Public Law 88–352, Title IV § 407(a), Act of July 2, 1964, 78 Stat. 248, 42 U.S.C. § 2000c–6, he could have asked for complete relief involving the entire Pasadena School system. If the complaint first filed concerned only the high school system, it could have been amended as of right before answer filed, to claim relief as to the entire school system. We do not read the sentence as containing words of limitation upon the rights of the United States, but as broadly stating such rights.

The right to intervention by the United States as provided in Sec. 902 is an absolute and not a permissive one. There are two other intervention provisions contained in the Civil Rights Act of 1964. Sec. 204(a) allows the Attorney General to intervene in cases seeking injunction against denial of ·equal access to public accommodations and Sec. 706 (e) allows similar intervention in employment discrimination cases. Both sections provide that "the court may, in its discretion, permit" such intervention. No similar discretionary language appears in Sec. 902.

Our reading of Sec. 902 is consistent with other decisions in which the government has intervened under that statute. In Sanders v. Ellington (M.D.Tenn.1968) 288 F.Supp. 937, ·the private action sought to prevent a planned expansion of the University of Tennessee. The government's complaint in intervention additionally sought an order requiring state officers to formulate a plan that would desegregate the entire state system of higher education. The court refused to enjoin the expansion of the University of Tennessee, but granted the state-wide relief sought by the government under Sec. 902.

McGhee v. Nashville Special School District No. 1 (Civil Action No. 962, W.D.Ark. unreported) was a similar case. Private litigants sought the desegregation of the two independent but overlapping school districts in Arkansas, one serving negro students and the other serving white students. The United States was allowed to intervene under Sec. 902 and to add as defendants the school officials of three additional independent districts which overlapped each other, one of which overlapped one of the original districts and the second overlapped the first added district. The litigation continues on the merits, on an

amended complaint in intervention despite the challenge by the defendants to the scope of the litigation as set forth in the government's amended complaint in intervention.

In Lee v. Macon County Board of Education (M.D.Ala.1967) 267 F.Supp. 458, 461, 475–478, aff. Wallace v. United States, 389 U.S. 215, 88 S.Ct. 415, 19 L.Ed.2d 422 (1967), the United States was allowed to intervene under Sec. 902 challenging the constitutionality of a state tuition grant law, although the original private plaintiffs had not challenged that statute. In addition, the private plaintiffs had sought relief only against the elementary and secondary schools on a state-wide basis. See, Lee v. Macon County Board of Education (M.D. Ala.1964) 231 F.Supp. 743, 755). The government requested and the court granted an order requiring the defendant state officers to implement plans for desegregation of all of the state's trade schools, vocational schools and colleges which were under the defendants' jurisdiction. Lee, supra, 267 F.Supp. at 461–462, 474–475.

A leading commentator, in referring to the intervenor with an absolute right to intervene, states, "It would be meaningless to give him an absolute right to intervene in order to protect his interests, if once in the proceedings he was barred from raising questions necessary for his own protection," 4 Moore's Fed. Practice, Par. 24.16(4), p. 117 (2d ed. 1968). Prior to the adoption of the F.R. Civ.P. in 1937, old equity Rule 37 barred an intervenor from raising issues which were not "subordinate" to the original parties' pleadings. No similar provision was carried over into the 1937 rules, and courts have not generally adhered to the old subordination doctrine. See, 4 Moore's Fed. Practice, Par. 24.16(1), pp. 108–112 (2d ed. 1968).

In Stewart-Warner Corp. v. Westinghouse Electric Corp. (2 Cir. 1963) 325 F.2d 822, cert. denied 376 U.S. 944, 84 S.Ct. 800, 11 L.Ed.2d 767 (1964), a district court dismissed an intervenor's counterclaims for patent infringement and unfair competition on the ground that they enlarged the issues involved in the main action. The court of appeals reversed, and said:

"The whole tenor and frame work of the Rules of Civil Procedure preclude application of a standard which strictly limits the intervenor to those defenses and counterclaims which the original defendant could himself have interposed. Where there exists a sufficiently close relationship between the claims and defenses of the intervenor and those of the original defendant to permit adjudication of all claims in one forum and in one suit without unnecessary delay—and to avoid as well the delay and waste of judicial resources attendant upon requiring separate trials—the district court is without discretion to deny the intervenor the opportunity to advance such claims. In the first instance, the district court's analysis must be accorded great weight. But where, as here, the record makes manifest the desirability of bringing the claims of all parties within the ambit of one litigation, we are compelled to reverse the district court's order." Id., p. 827.

Finally, the school board has an obligation to operate "a racially nondiscriminatory school system," Brown v. Board of Education (1955) 349 U.S. 294, 301, 75 S.Ct. 753, 99 L.Ed. 1083. A school board has the duty to take "whatever steps might be necessary to convert to a unitary system in which racial discrimination would be eliminated root and branch." Green v. County School Board (1968) 391 U.S. 430, 437–438, 88 S.Ct. 1689, 1694, 20 L.Ed.2d 716. Practically all of the Supreme Court decisions have required the desegregation of school systems and have not talked in terms of desegregating only the method of student assignment or only the high schools.[1]

---

1. The sole exception appears to be Rogers v. Paul, (1965) 382 U.S. 198, 86 S.Ct. 358, 15 L.Ed.2d 265, where the court's opinion shows that the review concerning a desegregation plan covering only a portion of the school system. There,

Brown v. Board of Education, supra; Green v. County School Board, supra; Cooper v. Aaron (1955) 358 U.S. 1, 7, 78 S.Ct. 1401, 3 L.Ed.2d 5, 19; Goss v. Board of Education (1963) 373 U.S. 683, 684, 83 S.Ct. 1405, 10 L.Ed.2d 632; Calhoun v. Latimer (1964) 377 U.S. 263, 84 S.Ct. 1235, 12 L.Ed.2d 288; Bradley v. School Board (1965) 382 U.S. 103, 86 S.Ct. 224, 15 L.Ed.2d 187; Griffin v. County School Board (1964) 377 U.S. 218, 220–221, 84 S.Ct. 1226, 12 L.Ed.2d 256; Monroe v. Board of Commissioners (1968) 391 U.S. 450, 88 S.Ct. 1700, 20 L.Ed.2d 733; Green v. County School Board (1968) 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716.

Full compliance with the Fourteenth Amendment obligation of the appellees to achieve and maintain a unitary, non-racial system of public education, Brown v. Board of Education (1954) 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873, and (1955) 349 U.S. 294, 300–301, 75 S.Ct. 753, 99 L.Ed. 1083, requires that the United States as an intervenor in a school desegregation action be permitted to maintain its complaint in intervention as filed. The underlying policy of Sec. 902 is to promote the strong public interest in obtaining compliance with the equal protection clause of the constitution. Sec. 902 requires that the Attorney General certify "that the case is of general public importance." This demonstrates the public interest involved. Any interpretation of the last sentence of Sec. 902 which would restrict the right of the United States to seek full and complete relief would not protect the public interest in achieving full compliance with the constitution.

We conclude that the district court erred in striking the allegations from the government's complaint in intervention.

a plan providing for a graduated one-grade-a-year desegregation was in existence but not yet applicable. The court in a footnote pointed out that "The constitutional adequacy of the method chosen for assigning students to the schools

## II.

### IS THE ORDER OF THE DISTRICT COURT APPEALABLE?

28 U.S.C. § 1292(a) (1) provides that an interlocutory order of a district court refusing to grant an injunction is an appealable order. Although the order entered herein merely strikes part of the government's complaint, it in fact denies injunctive relief sought by the government insofar as it concerned the other schools in the appellees' system in addition to the high schools.

Under Sec. 129 of the Judicial Code (old 28 U.S.C. § 227), the substantial equivalent of present § 1292(a) (1) of Title 28 U.S.C., an order denying leave to file a counterclaim praying for an injunction was an appealable interlocutory order. In-A-Floor Safe Co. v. Diebold Safe & Lock Co. (9 Cir. 1937) 91 F.2d 341; Hancock Oil Co. v. Universal Oil Products Co. (9 Cir. 1940) 115 F.2d 45, 47. So also appealable is an order dismissing such a counterclaim, General Electric Co. v. Marvel Rare Metals Co. (1932) 287 U.S. 430, 53 S.Ct. 202, 77 L.Ed. 408.

The same rule has been applied in determining the appealability of orders denying the right to file or dismiss counterclaims of intervenors. Stewart-Warner Corp. v. Westinghouse Electric Corp., 2 Cir., 325 F.2d 822, 825–826, cert. denied (1964) 376 U.S. 944, 84 S.Ct. 800, 11 L.Ed.2d 767; Switzer Bros. Inc. v. Locklin (7 Cir. 1953) 207 F.2d 483, cert. denied 347 U.S. 912, 74 S.Ct. 477, 98 L.Ed. 1069 (1954).

The cases cited by appellees are distinguishable. In Baltimore Contractors Inc. v. Bodinger (1955) 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233, an order of the district court refusing to grant a stay

for the purpose of desegregating the lower grades is not before us, and the method contemplated for the high schools is not part of the record." 382 U.S. 199, 86 S.Ct. at 359.

of proceedings was not an injunction and was unappealable. The Court said, "This ruling was a step in controlling the litigation before the trial court, not the refusal of an interlocutory injunction." Id., 185, 75 S.Ct. at 254.

Nor is Jorgensen Bros. v. Commerce-Pacific Inc. (9 Cir. 1961) 294 F.2d 768 controlling. It was a per curiam in which the three judges took three different views of the problem. Judge Hamley wrote a strong dissent, distinguishing *Baltimore Contractors,* supra, and citing cases where orders denying the filing or striking counterclaims for injunctive relief were held appealable orders.

In our case the district court, by striking allegations concerning the other units of the school system, in substance denied the government its right to the prohibitory and mandatory injunctions sought by its complaint in intervention. Whether a ruling is final or not under 28 U.S.C. § 1291, must be given "a practical rather than a technical construction", Gillespie v. United States Steel Corp. (1964) 379 U.S. 148, 152, 85 S.Ct. 308, 311, 13 L.Ed.2d 199. As a practical matter the district court by striking the allegations, has denied the government's request for an injunction.

Judge Friendly, in his dissent in Stewart-Warner Corp. v. Westinghouse Electric Corp., supra, draws a distinction which is applicable here. He stated,

"The distinction taken in National Machinery [National Machinery Co. v. Waterbury Farrel Foundry & Machine Co. (2 Cir. 1961) 290 F.2d 527] was between a 'refusal' based on an allegedly erroneous conclusion that the law does not permit the claim for an injunction to be heard in the action (as in General Electric [General Electric v. Marvel Rare Metals Corp. (1932) 287 U.S. 430, 53 S.Ct. 202, 77 L.Ed. 408] Cutting Room Appliances [Cutting Room Appliances v. Empire Cutting Machine Co. (2 Cir. 1951) 186 F.2d 997] and Telechron) [Telechron Inc. v. Parissi (2 Cir. 1952) 197 F.2d 757] and one based on alleged abuse of a discretionary power over the scope of the action. Where the order is of the former type, the danger of serious harm from the court's erroneous belief in the existence of a legal barrier to its entertaining a claim for an injunction has been thought to outweigh the general undesirability of interlocutory appeals." 325 F.2d 829.

*Telechron,* 197 F.2d 757, referred to by Judge Friendly, supra, is particularly pertinent. There an order striking certain matters from a complaint for a declaratory judgment was held to be an appealable interlocutory order.

In our case, the district court erroneously concluded that the United States was limited in the relief it could obtain, to the relief sought by the plantiffs. The order of the district court was more than a discretionary order controlling the litigation. The district court has given clear indication that the plaintiff high school students and their parents have no standing in the class action to represent students in the other grades, and that the United States has no right by complaint in intervention to expand the litigation to encompass the school system.

In Brunson v. Board of Trustees (4 Cir. 1962) 311 F.2d 107, cert. denied 373 U.S. 933, 83 S.Ct. 1538, 10 L.Ed.2d 690 (1963), a spurious class action under Rule 23(a) (3) F.R.Civ.Procedure involving 42 negro school children seeking injunctive relief against the school board, the district court struck from the complaint reference to all plaintiffs except one. The order was held appealable under 28 U.S.C. § 1292. The court said: "The order, therefore, was a denial of the broad injunctive relief which the plaintiff sought, which presumably would have affected all schools and all grades in the School District," Id., 108. Hood v. Board of Trustees (4 Cir. 1956) 232 F.2d 626, cert. denied 352 U.S. 870, 77 S.Ct. 95, 1 L.Ed.2d 76 (1956) treated an order denying a motion for summary judgment in a school case, as appealable since it effectively denied injunctive relief.

There remains the question of the effect of the district court's statement attached to its order, that the motion to strike was granted without prejudice to the right of the intervenor to urge the matter again. Had the district court denied the motion to strike, and set up a schedule to try the case in segments, we would have a different case.

Orders by the district court controlling the sequence in which portions of the case would be tried would ordinarily not constitute appealable orders. Switzerland Cheese Association Inc. v. E. Horne's Market, Inc. (1966) 385 U.S. 23, 87 S.Ct. 193, 17 L.Ed.2d 23, was a suit for trademark and unfair competition, in which the plaintiff sought a preliminary and permanent injunction. The district court denied a motion for summary judgment granting a permanent injunction, since it could not say that there was no genuine issue as to any material fact. The Court stated, in referring to the denial of the motion, "It is strictly a pretrial order that decides only one thing —that the case should go to trial." Id., p. 25, 87 S.Ct. at p. 195.

However, in Harris v. Gibson (5 Cir. 1963) 322 F.2d 780, a pretrial order which had the effect of continuing a temporary restraining order against the school board restraining transfer of students, was held to be in effect the granting of a preliminary injunction, and a final order, appealable under 28 U.S.C. § 1291.

We think the effect of the court's order allowing intervenors to again raise the question is similar in effect to an order of the court denying a temporary injunction without prejudice to an application for its renewal. Although the injunction may be granted at a later date, the prejudice suffered after its denial, is sufficient to make the denial an appealable order.

We are cognizant of the dangers of proliferating appeals from interlocutory orders. We think the issue here has public importance. Springfield School Committee v. Barksdale (1 Cir. 1965) 348 F.2d 261; that it concerns duties imposed on school districts under the constitution, *Springfield*, supra; that the case should promptly be decided on its entirety and that the order appealed from substantially runs afoul of these considerations. We would therefore limit our holding to the facts of this case and the considerations above set forth.

The order is reversed and the case remanded to the district court with instructions to reinstate the stricken allegations.