431 F.2d 26
 Frank K. WEINGARTNER, Robert L. Harper, Sus Suyeyasu, Neal Hall, Armando J. Acevedo, individually, and representing a class of unnamed plaintiffs, Appellants,
v.
UNION OIL COMPANY OF CALIFORNIA, Appellee.
 No. 23488.
 United States Court of Appeals, Ninth Circuit.
 August 3, 1970.
 
 Maxwell Keith (argued), James J. Duryea, San Francisco, Cal., for appellants.
 Moses Lasky (argued), Richard Haas, of Brobeck, Phleger & Harrison, San Francisco, Cal., L. A. Gibbons, Douglas C. Gregg, E. A. McFadden, Los Angeles, Cal., for appellee.
 Before HAMLEY, DUNIWAY and WRIGHT, Circuit Judges.
 HAMLEY, Circuit Judge:
 
 
 1
 Five gasoline service station dealers who sell the products of Union Oil Company of California (Union Oil), brought this antitrust suit against Union Oil on April 20, 1965. Proceeding under 15 U. S.C. §§ 15 and 26, they sought damages for the asserted violation of sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2. According to the complaint, the alleged violation consisted of Union Oil's retail price control of the gasoline sold by plaintiffs.[1]
 
 
 2
 Ten additional gasoline service station dealers engaged in selling Union Oil products were eventually permitted to intervene for the purpose of asserting similar claims. The original plaintiffs and the ten intervenors will be referred to herein as plaintiffs. During the period in question all of them did business in the Northern District of California, where this action was brought. Their single damage claims against Union Oil aggregate $117,900, but they ask that this amount be trebled to $353,700.
 
 
 3
 By way of a second claim in the complaint and amended complaints, supplemented by an independent motion, plaintiffs also sought to establish a class action under Fed.R.Civ.P. 23. In this connection plaintiffs asserted that they represent a class consisting of all independent Union Oil retail service station operators in seven or eight western states who did business under Union Oil consignment agreements or retail dealer storage and purchase agreements during the four years preceding the filing of the complaint herein. Defendants estimate that a maximum of three thousand dealers would be brought in to the litigation if a class action were permitted. Plaintiffs allege that the single damage claims of these additional dealers would aggregate $34,800,000, trebled to $104,400,000.
 
 
 4
 The district court denied plaintiffs' motion to declare a class action. In so ruling, the court held that plaintiffs failed to establish the prerequisites of paragraphs (2), (3) and (4) of Rule 23(a), and failed to meet the conditions set forth in Rule 23(b) (3).[2] Plaintiffs requested the district court to certify the case for an interlocutory appeal to this court, pursuant to 28 U.S.C. § 1292(b). The district court refused to certify, whereupon plaintiffs took this appeal, purportedly under 28 U.S.C. § 1291 (final decisions), from the order denying the motion to declare a class action.
 
 
 5
 Union Oil argues that plaintiffs may not prosecute this appeal because the order in question is not a final decision within the meaning of 28 U.S.C. § 1291.
 
 
 6
 Perhaps it would be sufficient to cite Rogers v. Alaska Steamship Co., 249 F. 2d 646, 649 (9th Cir. 1957), which appears to support Union Oil's contention. However, when that case was decided, amended Rule 23 of the Federal Rules of Civil Procedure, effective July 1, 1966, had not been adopted, and plaintiffs' contentions are based upon that rule. Consequently, we do not think that our decision in Rogers is controlling here.
 
 
 7
 A "final decision" generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment. Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945). But in order for a decision to be "final" within the meaning of section 1291, it is not necessary that it be the last order possible to be made in the case. Gillespie v. United States Steel Corp., 379 U.S. 148, 152, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964).[3]
 
 
 8
 In Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L. Ed. 1528 (1949), for example, the Supreme Court held final and appealable an order denying a corporation's motion to require the plaintiff in a stockholder's derivative action to give defendant security for reasonable suit expenses. The Cohen court held that the order there in question fell within that small class of orders which
 
 
 9
 "* * * finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." 337 U.S. at 546, 69 S.Ct. at 1225.
 
 
 10
 Citing Gillespie and Cohen, the Second Circuit, in Eisen v. Carlisle & Jacquelin, 370 F.2d 119 (2nd Cir. 1966), denied a motion to dismiss an appeal from an order striking a class action claim. The district court had dismissed the class action claim on the ground that it was not maintainable under the Federal Rules, although it had permitted the plaintiff to continue to litigate his individual claim. Pointing out that the plaintiff's personal claim in that "complex and costly" case was for recovery of only seventy dollars and that "no lawyer of competence" would pursue such a claim, the Second Circuit observed that dismissal of the class action claim would:
 
 
 11
 "* * * for all practical purposes terminate the litigation. Where the effect of a district court's order, if not reviewed, is the death knell of the action, review should be allowed." 370 F.2d at 121.[4]
 
 
 12
 In resisting Union Oil's contention in the present case that the district court's order denying a class action is not "final" within the meaning of section 1291, plaintiffs rely upon what they see as an analogous order held appealable in Cohen and upon the specific holding in Eisen.[5] However, in our opinion neither Cohen nor Eisen (read in the light of subsequent Second Circuit cases) brings the district court order in this case within the scope of section 1291.
 
 
 13
 The Cohen approach rests upon either of two underpinnings: the "collateral order" rule, e. g., Frank, Requiem for the Final Judgment Rule, 45 Tex.L.Rev. 292, 300-302 (1966); or the likelihood of "irreparable harm" to a party if immediate review is not allowed, e. g., Note, Appealability in the Federal Courts, 75 Harv.L.Rev. 351, 364 (1961); see also, Forgay v. Conrad, 47 U.S. 201, 6 How. 201, 12 L.Ed. 404 (1848). Under neither premise does Cohen render the order before us appealable. The district court's dismissal of the class claim did not deal with rights collateral to the merits of the lawsuit. Rather, it struck one of the two counts from the complaint entirely and had the effect of blocking that claim from this lawsuit. Nor will denial of review of that order at this stage create an irreparable hardship for plaintiffs, as we develop more fully in the discussion which follows.
 
 
 14
 Turning to Eisen and its progeny: in City of New York v. International Pipe & Ceramics Corp., 410 F.2d 295 (2nd Cir. 1969), the Second Circuit was asked to review a district court order holding that an antitrust suit brought by twenty-seven governmental agencies could not be treated as a class action. The court held that the described order was not a final order reviewable under 28 U.S.C. § 1291. In so ruling, the Second Circuit restricted its prior decision in Eisen to the latter's "death knell" rationale — an order dismissing a class action is appealable only when the dismissal for all practical purposes spells the end of the litigation. In International Pipe, by comparison,
 
 
 15
 "* * * no such situation exists. The City and twenty-seven plaintiff-intervenors with adequate resources to continue the action and with substantial amounts at stake will undoubtedly carry on." Id., at 299.
 
 
 16
 The finality question arose again in the Second Circuit in Caceres v. International Air Transport Ass'n, 422 F.2d 141 (2nd Cir. 1970), also an antitrust action. In that case seven travel agents sought to represent not only themselves but also a class of similarly situated travel agents. The district court entered an order determining that their action was not maintainable as a class action. The Second Circuit held that this order was not appealable, once again distinguishing Eisen on the grounds articulated in International Pipe.[6] Cf. 3B J. Moore, Federal Practice ¶¶ 23.50 at 23-1105, 23.97 at 23-1951 (2nd ed. 1969).
 
 
 17
 In our opinion International Pipe and International Air Transport, rather than Eisen, are to be followed in this case. The primary factor which gave finality to the class action orders in Eisen and Green (see note 5 above) was the effect of that order upon the plaintiff's personal claim. Without the financial support inherent in a class action, plaintiff in Eisen could not have proceeded with his seventy dollar personal claim, nor could plaintiff in Green have proceeded with his claim of less than one thousand dollars. In our case, on the other hand, the fifteen plaintiffs have, as noted above, a $353,700 stake in the suit. We are not convinced by any representation made to us by plaintiffs that they lack the economic ability to finance their part of this lawsuit.
 
 
 18
 Plaintiffs also make the contention, accepted in Eisen, 370 F.2d at 120, and touched on in note 4 above, that un-named members of the class they seek to represent will be practically unable to appeal the striking of the class action claim after plaintiffs herein proceed to a final judgment. However, this argument for allowing an appeal of the order now before us seems to have been forsaken by the Second Circuit in International Air Transport. Although noting that the argument was "not without force," the court in that case pointed out that its logical end would be that an order refusing class action treatment should almost always be appealable:
 
 
 19
 "Such a rule of broad appealability would run contrary to the various policies behind congressional adherence to the final judgment rule * * *." 422 F.2d at 143.
 
 
 20
 We agree.
 
 
 21
 The appeal having been taken from a non-appealable order, we conclude that it must be dismissed.
 
 
 22
 So ordered.
 
 
 
 Notes:
 
 
 [1]
 Plaintiffs challenge the legality of Union Oil's consignment agreements with retail dealers, which were also involved in Simpson v. Union Oil Co., 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964), clarified in 396 U.S. 13, 90 S.Ct. 30, 24 L.Ed.2d 13 (1969), and its "Retail Dealer Storage and Purchase Agreements" and "Retail Dealer Gasoline Purchase Contracts," which were utilized after the firstSimpson decision.
 
 
 [2]
 In reference to Fed.R.Civ.P. 23(b) (3), the district court stated that it was:
 "* * * unable to find that questions of law or fact common to the members of the class * * * `predominate over any questions affecting only individual members' nor can the court find `that a class action is superior to other available methods for the fair and efficient administration [adjudication] of the controversy.'"
 
 
 [3]
 InGillespie, the Supreme Court also said:
 "[I]t is impossible to devise a formula to resolve all marginal cases coming within what might well be called the `twilight zone' of finality. Because of this difficulty this Court has held that the requirement of finality be given a `practical rather than a technical construction.' * * * [I]n deciding the question of finality the most important competing considerations are `the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other.'" 379 U.S. at 152-153, 85 S.Ct. at 310.
 
 
 [4]
 In theEisen opinion the Second Circuit also noted one other problem that might be created by refusing to consider the dismissal of a class action an appealable order:
 "If the appeal is dismissed, not only will Eisen's claims never be adjudicated, but no appellate court will be given the chance to decide if this class action was proper under the newly amended Rule 23." 370 F.2d at 120.
 In other words, the unknown members of the class sought to be represented will have no incentive (assuming their claims are likewise small or they have no notice of the action) to appeal the dismissal of the class action even if the original plaintiff or plaintiffs carry their action through to a final judgment.
 
 
 [5]
 Plaintiffs also cite Green v. Wolf Corp., 406 F.2d 291, 295 at note 6 (2nd Cir. 1968), which followedEisen and in which it also appeared that if a class action were not allowed the whole lawsuit would come to an end.
 But see the comment on Green in Caceres v. International Air Transp. Ass'n., 422 F.2d 141, 143 (2nd Cir. 1970).
 In Hohmann v. Packard Instrument Co., 399 F.2d 711 (7th Cir. 1968), also relied upon by plaintiffs, the appeal was taken under the interlocutory provision of 28 U.S.C. § 1292(b), insofar as the class action feature of the district court order was concerned. As noted above, plaintiffs in our case were not permitted to appeal under section 1292(b).
 
 
 [6]
 The Second Circuit stated, in part:
 "* * * [T]he gloss upon section 1291 for alleged classes under Rule 23(b) (3) should not be expanded beyond the type of situation present in Eisen and Green. In those two cases, the average claim of each member of the class was quite small. Here it is not; Judge Mansfield pointed out that the average claim alleged is $150,000 per member. [By comparison], the claim by the representative plaintiff in Eisen was only $70 and in Green was less than $1,000. While the damage claims of the seven plaintiffs here are not yet specific, enough appears in the record to justify Judge Mansfield's conclusion that no claim was of `such a low order of magnitude that it would be unfeasible or uneconomic for the claimant to seek redress.' 46 F.R.D. at 95. Therefore, we hold that the judge's order was not a final decision under 28 U.S.C. § 1291. Accordingly, the appeal is dismissed." 422 F.2d at 144 (footnote omitted).