**BUILD OF BUFFALO, INC., et al.,
Plaintiffs-Appellants,**

v.

**Frank A. SEDITA, as Mayor and Chief
Executive of the City of Buffalo, et
al., Defendants-Appellees.**

**No. 484, Docket 34886.**

United States Court of Appeals,
Second Circuit.

Argued March 3, 1971.

Decided April 13, 1971.

---

8.   Havelock v. United States, 427 F.2d 987 (10th Cir. 1970).

Herman Schwartz, New York Civil Liberties Union, Buffalo, N. Y. (Richard Lipsitz, Edward I. Koren, Carmen Putrino, David Gerald Jay, Buffalo, N. Y., on the brief), for plaintiffs-appellants.

James J. McLoughlin, Buffalo, N. Y. (Anthony Manguso, Corporation Counsel, Buffalo, N. Y., on the brief), for defendants-appellees.

Before LUMBARD, Chief Judge, KAUFMAN and ANDERSON, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

This interlocutory appeal reaches us in an awkward procedural posture. On March 13, 1970, Judge Henderson dismissed plaintiffs' omnibus civil rights action (brought under 42 U.S.C. §§ 1981–1983, 1986, 1988–1990) as to three of many defendants for failure to state an actionable claim, F.R.Civ.P. 12(b) (6). The initial question is whether the order is appealable because it is undoubtedly not a final order, 28 U.S.C. § 1291, or whether it is maintainable nonetheless pursuant to 28 U.S.C. § 1292(a) (1) as an interlocutory order "refusing" an injunction. Since we are of the view that the latter statute applies we reach the merits of the appeal and hold that the partial dismissal was improper.

## I.

That the order of dismissal was not a final one is conclusively determined by reference to F.R.Civ.P. 54(b). Plaintiffs include numerous individuals who claim that defendants have violated rights guaranteed to them by the Constitution, as well as nine civic and other private organizations.[1] Suing individually and as representatives of a rather amorphous class of "others similarly situated,"[2] they seek monetary damages and a variety of equitable relief, including some quite drastic remedies, as will appear. The three defendants as to whom the complaint has been dismissed are Frank A. Sedita, the Mayor and Chief Executive of the City of Buffalo, New York; the Commissioner of the Buffalo Police Department, Frank Felicetta; and the Department of Human Relations of Buffalo. Plaintiffs here appeal from the dismissal as to Mayor Sedita and Commissioner Felicetta. In addition, the complaint joins as defendants various members of the Buffalo Police Department, some named and others anonymous, who have allegedly engaged in "a systematic pattern of conduct resulting in numerous, separate and distinct violations of the rights, privileges, and immunities" of plaintiffs and the class they seek to represent. Appellees Sedita and Felicetta are said by plaintiffs to "have condoned or encouraged," or to have "directed" or "permitted" such conduct. Also (and alternatively) the Mayor and Police Commissioner are charged with having so "lost control"

1. The class is described in the fifth paragraph of the complaint as "all of those persons who reside in, are employed in, or are entitled to enjoy the benefits, services and facilities of the City of Buffalo."

2. The complaint alleges that these organizations "are concerned and effected" by the alleged police abuses and that their membership includes "members of the class which plaintiffs seek to represent."

over some of the Buffalo police "as to make effective law enforcement impossible" and also with having failed to respond in any manner to "numerous specific complaints" by plaintiffs and others of police conduct in violation of the federal Constitution, New York law, and Police Department Regulations.

■ The dismissal as to appellees of course did not affect the continuing vitality of the action against the other defendants, the individual police officers. Because the district court did not direct the entry of a final judgment against appellees or determine that there was "no just reason for delay" prior to entering a final order, his order granting defendants' Rule 12(b) (6) motion is not appealable under 28 U.S.C. § 1291 or Rule 54(b). Nor did the district court accompany its order with a statement as to the desirability of an interlocutory appeal required if plaintiffs were to attempt to proceed under 28 U.S.C. § 1292 (b).

■ Plaintiffs' complaint, however, included several prayers for permanent injunctive relief against all defendants. Moreover, on March 3, 1970, plaintiffs added a motion for a preliminary injunction to restrain defendants *pendente lite* from committing a formidable list of specific kinds of abusive police practices. By granting the motion of the Mayor, the Police Commissioner and the Department of Human Relations, to dismiss,[3] the dis-

trict court effectively denied at the same time plaintiffs' motion for a preliminary injunction as against those defendants.[4] The resultant denial of an injunction is appealable under 28 U.S.C. § 1292(a) (1). The reasoning and decision in General Electric Co. v. Marvel Rare Metals Co., 287 U.S. 430, 53 S.Ct. 202, 77 L.Ed. 408 (1932) [5] is persuasive and, in this context, is also authority that would be difficult to ignore:

> But by their motion to dismiss, plaintiffs themselves brought on for hearing the very question that, among others, would have been presented to the court upon formal application for an interlocutory injunction. That is, whether the allegations of the answer are sufficient to constitute a cause of action for an injunction. And the court necessarily decided that upon the facts alleged in the counterclaim defendants were not entitled to an injunction. It cannot be said \* \* \* that the dismissal did not deny to defendants the protection of the injunction prayed in their answer. *Id.* at 433, 53 S.Ct. at 203.

Judge Henderson's dismissal for failure to state a claim was not a mere practice order "controlling the sequence in which portions of the case would be tried," Spangler v. United States, 415 F.2d 1242, 1248 (9th Cir. 1969),[6] or simply consigning plaintiffs' claim against appellees to a separate action as an exercise of the court's control over the scope

---

3. On February 24, appellees moved to dismiss the class action, strike certain matter from the complaint, and to sever the causes of action, as well as to dismiss under Rule 12(b), both for failure to state a claim and for lack of jurisdiction over the subject matter.

4. Both appellants' and appellees' motions were returnable March 9. On that date, during argument before Judge Henderson, plaintiffs volunteered to postpone the argument on the motion for a preliminary injunction but the offer was mooted when the court from the bench granted appellees' motion to dismiss.

5. In *Marvel*, a patent infringement action, the district court had dismissed, for lack

of jurisdiction, a counterclaim asserted by defendant which included a prayer for an injunction and accounting. The Court held that the dismissal was appealable under old 28 U.S.C. § 227, predecessor the present Section 1292(a) (1).

6. *Spangler* was a class action by individual students seeking to desegregate three Pasadena, California, public high schools. The motion of the United States to intervene was granted and the Government enlarged the action by requesting an injunction to desegregate the entire Pasadena public school system. The district court granted defendants' motion to strike the claims of the complaint with respect to all but the three high schools originally in the suit.

of the litigation. See Stewart-Warner Corp. v. Westinghouse Electric Corp., 325 F.2d 822, 829 (2d Cir. 1963) (Friendly, J., dissenting), cert. denied, 376 U.S. 944, 84 S.Ct. 800, 11 L.Ed.2d 767 (1964). Rather, the district court's determination that plaintiffs were entitled to no relief under federal law, including preliminary relief, was as decisive to plaintiffs as would have been a refusal to grant a preliminary injunction on the grounds that plaintiffs failed to demonstrate either likelihood of ultimate success or irreparable injury.

Judge Anderson dissents from this portion of our holding on the premise that the dismissal of the action against the Mayor, the Chief of Police, and the Department of Human Relations did not "affect * * * the quality of the relief prayed for by the plaintiffs." Our response to this is that we need not decide that most dismissals as against some defendants in suits seeking injunctive relief are appealable. It is sufficient to say that our jurisdiction here is clearly established under the second of Judge Anderson's own proposed tests. The dismissal did not merely limit the number of defendants against which any injunctive relief might ultimately run. In Judge Anderson's words, it resulted in "contracting the scope of the injunctive relief originally sought." It is apparent that the gist of plaintiffs' claim was the systematic and knowledgeable failure of responsible authorities to take any measures to correct a pattern of abusive police practices. In order to establish that there was in fact a *pattern* of police misbehavior, plaintiffs seek to prove a number of separate instances of misconduct. So far as the relief sought against the appellees before us, the claims against the individual officers are only exemplary. Thus, even if injunctive relief were eventually awarded against each of the named individual police defendants, it would not at all satisfy plaintiffs' claim for relief from systematic misbehavior at levels of authority higher than that of the patrolman on the beat. Indeed, for an injunction only against individual policemen to substitute adequately for the relief plaintiffs seek against the present appellees, it would have to run against every officer in the Buffalo Police Department. Thus, the dismissal against the Mayor, Chief of Police, and Department of Human Relations, operated as a refusal of a distinct and separate claim for an injunction, for which any other relief that might emerge from the case could never adequately substitute.

Finally, Judge Anderson is concerned that disposition of the present appeal may affect the rights of the other defendants in the case, without affording them an opportunity to be heard. But the disposition of this appeal will have no greater impact on the rights of the individual police defendants than if plaintiffs had adopted a different strategy of litigation and chosen not to join their claims against the individual policemen with their separate claim against the present appellees. Courts inevitably announce legal principles that affect people unrepresented in the adjudications from which the principles emerge. And specifically, the other defendants in this action will not be affected in the least by our disposition of the question whether plaintiffs' complaint stated a cause of action against the present appellees.

## II.

Hence we reach the merits of the dismissal, and we find ourselves in partial disagreement with Judge Henderson. The venerable standard for judging the propriety of a dismissal on the pleadings under the Federal Rules is not contested here. Accepting the allegations in the complaint as true, as we must on a Rule 12(b) (6) motion, Escalera v. New York City Housing Authority, 425 F.2d 853, 857 (2d Cir. 1970), the complaint may not be dismissed "unless it appears 'to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim.'" Holmes v. New York City Housing Authority, 398 F.2d 262,

265 (2d Cir. 1968). Such elementary formulas show their worth in the unusual case and this particular standard is especially useful here, where plaintiffs have combined traditional pleas for injunctive relief with a more exotic plea that may tend to distort one's perception of the complaint.

■ As indicated above, the essence of the plaintiffs' theory as it is developed in the complaint is that certain members of the Buffalo Police Department have engaged in "a systematic pattern of conduct" over a period of many years which has resulted in plaintiffs being subjected under color of state law to the deprivation of constitutional rights. Plaintiffs by no means confine themselves to such generalities, however. After alleging broadly that defendants have engaged in illegal "acts of violence, intimidation, humiliation, and other * * misconduct" plaintiffs enumerate fourteen separate varieties of police abuses to which they have allegedly been subjected.[7] There follows what might be described as a bill of particulars reciting in seventeen lettered paragraphs specific instances of the kinds of abuses complained of.

It is in this context of specific allegations that the more expansive and diffuse allegations directed against appellees Sedita and Felicetta occur.

Although we need not now decide the question we have little doubt that upon these allegations plaintiffs will not succeed in establishing a right to the most drastic remedy they request, namely that appellees be required to adopt a complaint mechanism approved by the district court for processing and remedying police misconduct. If that mechanism should fail, plaintiffs propose a still more extraordinary measure: that the district court appoint a special master as receiver for the Police Department to establish "a fair and equitable complaint machinery to investigate and provide redress for complaints of police misconduct or police violence."

The question of the propriety of remedies prayed for by plaintiffs, however, is not the issue on this appeal. The question here is whether plaintiffs might conceivably have some remedy, whether or not suggested by them, and on the face of this complaint we cannot say "to a certainty" that they will not be able to make out a case against Felicetta and Sedita calling for at least part of the equitable relief they request, or some other appropriate relief. Of course, that is based on the assumption that the plaintiffs are proper representatives of the "class" and that this extraordinary and diffuse "class" is appropriate, questions we are not called upon to decide on this appeal.[8]

7. The sprawling nature of this part of the complaint is conveyed by plaintiffs' motion for a preliminary injunction, which requested that defendants be restrained "from beating, intimidation, humiliating [sic] members of plaintiffs' class in the course of affecting arrest or while in custody, from denying members of plaintiffs' class the right to make telephone calls to counsel or families upon being arrested, from indiscriminately arresting members of plaintiffs' class without reason or probable cause to believe that a crime has been committed, from making false charges or "cover charges" against members of plaintiffs' class, from arresting members of plaintiffs' class from [sic] attempting to exercise their rights under the Constitution of the United States, from referring to members of plaintiffs' class by derogatory, obscene, or racial epithets, from re-

fusing to give members of plaintiffs' class proper protection from criminal acts perpetrated against them by various persons, including members of the Buffalo Police Department. * * * "

8. The parties to this appeal have directed our attention to a subsequent order by Judge Henderson entered January 22, 1970, apparently dismissing the complaint on the ground that it is not maintainable as a class action. During oral argument, this panel requested counsel for all parties to submit supplementary briefs discussing the question whether this interlocutory appeal was properly before us, an issue we have resolved in part I of this opinion. In response to the panel's request, counsel for plaintiffs-appellants have informed the court that they do not intend to appeal Judge Henderson's dismissal of Jan-

No cases have been referred to us, nor has our own research disclosed any, involving a claim similar to appellants', of systematic or purposeful police abuse distributed over many years and apparently not directed at a particular identifiable class of persons. Thus, plaintiffs rely on such cases as Schnell v. City of Chicago, 407 F.2d 1084 (7th Cir. 1969), for the proposition that "[u]nder section 1983, equitable relief is appropriate in a situation where governmental officials have notice of the unconstitutional conduct of their subordinates and fail to prevent a recurrence of such misconduct." *Id.* at 1086. However in that case plaintiffs represented a class of news photographers whose right to gather and report news had been massively interfered with during the brief and violent period when the Democratic Party convened in Chicago in the summer of 1968. A similar case is the well known "Venery Raids" case, Lankford v. Gelston, 364 F.2d 197 (4th Cir. 1966), where police officers searching for suspects in the shooting of a fellow policeman searched some 300 homes in a Negro area of Baltimore both day and night over the course of nineteen days and with no pretense of justification, an episode which the court described as "a series of the most flagrant invasions of privacy ever to come under the scrutiny of a federal court," *id.* at 201. See also, Wheeler v. Goodman, 298 F.Supp. 935 (W. D.N.C.1969); Cottonreader v. Johnson, 252 F.Supp. 492 (M.D.Ala.1966). But neither does this complaint fall in that category of cases, where equitable relief was held inappropriate on the basis of a single incident of misconduct combined with a general allegation that recurrence could be expected. E. g., Belknap v. Leary, 427 F.2d 496 (2d Cir. 1970); Peek v. Mitchell, 419 F.2d 575 (6th Cir. 1970).

Despite the diffuseness and broadside nature of their claims, we believe that plaintiffs' allegations in the complaint are sufficient to satisfy the generous pleading requirements of the Federal Rules. Deliberate, purposeful activity resulting in widespread police abuses and perhaps rising to the level of *de facto* policy were held to be an appropriate occasion for injunctive relief in such cases as *Lankford* and *Schnell.* Whether plaintiffs can establish this pattern of police abuse, and, if so, what relief is justified, must be left initially to the district court. Moreover, as we have indicated the propriety of the class suit remains to be determined. But we believe Judge Henderson should not have dismissed the suit as against appellees Sedita and Felicetta simply because some of the relief sought seemed far-fetched.

Reversed.

LUMBARD, Chief Judge (concurring):

I agree that Judge Henderson's order dismissing the complaint as against the Mayor and the Commissioner of Police is reviewable as an interlocutory order "refusing" an injunction under 28 U.S.C. § 1292(a) (1), but I feel it would be unwise at this time to attempt to establish broad propositions of law to govern all situations where an appeal is sought under that section. First, the confusion generated by this case may unduly color our judgment as to the general desirability of appeals at this stage of litigation when, in practical effect, all injunctive relief against the appellees has been denied. Second, although we requested and received supplementary briefs on the appealability of Judge Henderson's order, the parties did not consider the possibility that review could be had under § 1292(a) (1), and we all agree that this is the only relevant statute. Thus, we are without the customary benefit of assistance from the parties in resolving a difficult question of law. For these reasons, I would avoid statements more general than are necessary to resolve the instant case.

Judge Anderson's dissent recognizes that we have jurisdiction where the dis-

uary 22. We intimate no view on the question whether the action against these

appellees is maintainable as a class action.

missal for all practical purposes effectively terminates the litigation, or where the scope of injunctive relief originally sought is necessarily contracted. I agree that in such cases immediate review is justified. Since I also agree with Judge Kaufman that the instant litigation does meet these standards proposed by the dissent, I find it unnecessary to decide whether some or most other cases dismissing an action against some parties where injunctive relief is sought should be appealable.

In my view, Judge Henderson's dismissal of the Mayor and the Commissioner of Police as defendants effectively terminated this litigation, and certainly nullified the injunctive relief that was requested. The complaint plainly sought to restrain the Buffalo police from committing alleged massive and systematic violations of the constitutional rights of the named plaintiffs and other citizens of Buffalo who are similarly situated. After Judge Henderson's dismissal, plaintiffs were placed in a logically untenable position: a "class" action against several named and anonymous police officers seeking injunctive and declaratory relief against systematic violations of constitutional rights, and institution of an adequate grievance machinery. Without the Mayor and the Police Commissioner as parties, Judge Henderson had no choice but to dissolve the class action, dismiss the suit entirely, and consign the individual plaintiffs to separate actions for the specific deprivations they allegedly suffered. Judge Henderson so acted on January 22, 1971, and plaintiffs inform us by letter dated March 12, 1971, that they do not intend to appeal this determination.

The above letter also claims that the allegations against the individual police officers were included in the complaint "primarily as illustrations of the abuse which the defendants-appellees herein, encouraged and condoned." This contention obviously is well-founded, for the plaintiffs would accomplish virtually nothing by obtaining equitable relief against a handful of police officers. The detailed and specific nature of this complaint may well have been a response to the holding of at least one circuit that conclusory allegations of police misconduct failed to state a cause of action under the Civil Rights Act. Peek v. Mitchell, 419 F.2d 575, 579 (6th Cir. 1970).

For these reasons, I conclude that the order appealed from meets both of Judge Anderson's proposed tests, and is reviewable under § 1292(a) (1). On the merits, I join in Judge Kaufman's opinion.

ANDERSON, Circuit Judge (dissenting):

I dissent from the majority's determination that the order from which Build of Buffalo Inc. has appealed is an interlocutory order refusing an injunction, appealable under 28 U.S.C. § 1292 (a) (1).[1] This holding conflicts with a recent decision by another panel of this court, McMillan v. Board of Education, 430 F.2d 1145 (2 Cir. 1970),[2] and involves a needless extension of appellate jurisdiction over an order that exhibits none of the potential harm to the litigants which § 1292(a) (1) was designed to alleviate.

This appeal is another example of the not infrequent tendency of counsel to be inattentive to important questions of appellate jurisdiction. Alart Associates, Inc. v. Aptaker, 402 F.2d 779 (2 Cir. 1968). Rule 54(b) of the Federal Rules

---

1. 28 U.S.C. § 1292(a) (1) provides:
"(a) The courts of appeals shall have jurisdiction of appeals from:

(1) Interlocutory orders of the district courts * * * granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a

direct review may be had in the Supreme Court;"

2. Accord, Tracy v. Robbins, infra. Contra, Bowling Machines, Inc. v. First National Bank, 283 F.2d 39 (1 Cir. 1960). See Berry v. Housing & Home Finance Agency, 340 F.2d 939, 940 n. 1 (2 Cir. 1965), assuming without deciding that this type of order is appealable.

of Civil Procedure [3] cannot be the source of jurisdiction over this appeal, as its requirements have not been met,[4] and an order dismissing an action as to some but not all the defendants, at least where the defendants are jointly liable, is not a final order appealable under 28 U.S.C. § 1291 in the absence of compliance with Rule 54(b).[5] McMillan v. Board of Education, *supra;* Davis v. National Mortgage Corp., 320 F.2d 90 (2 Cir. 1963); Jackson v. Hart, 435 F.2d 1293 (3 Cir. 1970); Tracy v. Robbins, 373 F.2d 13 (4 Cir. 1967); Feist v. McGee, 433 F.2d 1015 (9 Cir. 1970); Hamman v. United States, 399 F.2d 673 (9 Cir. 1968); 9 Moore's Federal Practice ¶ 110.09 at 125–129. Thus, the sole question of appealability is the one identified by the majority, whether the district court's dismissal as to the Mayor, Chief of Police and Department of Human Relations of the City of Buffalo constitutes an interlocutory order denying an injunction within the meaning of the interlocutory appeals statute, 28 U.S.C. § 1292(a) (1).

The majority asserts that the appealability of the present order is settled by General Electric Co. v. Marvel Rare Metals Co., 287 U.S. 430, 53 S.Ct. 202, 77 L.Ed. 408 (1932), where the Supreme Court held that an order dismissing a counterclaim for injunctive relief against a single plaintiff, was appealable as an interlocutory order denying an injunction. Accord, Berlin v. E. C. Publications, Inc., 329 F.2d 541 (2 Cir.), cert.

denied, 379 U.S. 822, 85 S.Ct. 46, 13 L. Ed.2d 33 (1964); Stewart-Warner Corp. v. Westinghouse Electric Corp., 325 F.2d 822 (2 Cir. 1963), cert. denied, 376 U.S. 944, 84 S.Ct. 800, 11 L.Ed.2d 767 (1964); Vanity Fair Mills v. T. Eaton Co., 234 F.2d 633 (2 Cir.), cert. denied, 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 76 (1956); Telechron, Inc. v. Parissi, 197 F.2d 757 (2 Cir. 1952); Cutting Room Appliances Corp. v. Empire Cutting Machine Co., Inc., 186 F.2d 997 (2 Cir. 1951); Rains v. Cascade Industries, Inc., 402 F. 2d 241 (3 Cir. 1968); Simmonds Aerocessories Ltd. v. Elastic Stop Nut Corp., 257 F.2d 485 (3 Cir. 1958). The reliance on *Marvel,* however, overlooks the important fact that the present appeal is not from an order completely disposing of *a claim for injunctive relief* but is merely an appeal from an order dismissing a *single cause of action as to some of the defendants.*

The question whether the policies behind § 1292(a) (1) require different treatment for a dismissal of some defendants as opposed to a complete dismissal of a cause of action or claim for relief in a multiple-claim case is not of recent vintage. In United States v. New York, New Haven & Hartford R. Co., 276 F.2d 525 (2 Cir.), cert. denied, Tri-Continental Financial Corp. v. United States, 362 U.S. 961, 964, 80 S.Ct. 877, 4 L.Ed. 2d 876 (1960), the United States, in behalf of the Interstate Commerce Com-

3. Rule 54(b), F.R.Civ.P., provides:
    "When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

4. Judge Henderson's order neither expressly directs entry of judgment nor expressly determines that there is no just reason for delay.

5. In Davis v. National Mortgage Corp., *supra,* an appeal from an entry of default judgment against some but not all jointly liable defendants was dismissed for lack of compliance with Rule 54(b). The opinion expressly left open the question whether Rule 54(b) permits the entry of final judgment against some but not all defendants whose liability is joint.

mission, brought an action against the New Haven seeking a declaration that an agreement for the repurchase of preferred shares between the railroad and certain banking groups was invalid and an injunction against performance of the agreement. The district court entered summary judgment for the New Haven. We reversed. A few weeks later, however, we reconsidered the reversal in light of a suggestion that we lacked jurisdiction over the Government's appeal. At that time we also considered an appeal involving an action by the stockholders of the New Haven claiming, inter alia, that the agreement between the New Haven and the banking group was invalid and seeking an injunction against the performance of the agreement. The complaint was in ten counts, and counts five, six and seven set forth three theories in support of the claim for injunctive relief against performance of the agreement. The district court entered an order pursuant to Rule 54(b) dismissing count six of the complaint and an appeal was taken. We held that Rule 54(b) was improperly invoked because the action was not final, due to the fact that other theories of liability remained open, but that the order was appealable under § 1292(a) (1) as an order refusing an injunction. 276 F.2d at 545. The contention that there was no refusal of an injunction because other grounds for granting the injunction remained undetermined was rejected,[6] and we cited as authority earlier decisions holding that in a suit for injunctive relief an order denying plaintiff's motion for summary judgment was an order refusing an injunction under § 1292(a) (1) even though the plaintiff might later prevail at trial. Federal Glass Co. v. Loshin, 217 F.2d 936 (2 Cir. 1954); Raylite Electric Corp. v. Noma Electric

Corp., 170 F.2d 914 (2 Cir. 1948). We stated that the appealability of the order in the stockholders' suit followed *a fortiori* from Telechron, Inc. v. Parissi, *supra,* where an order striking those portions of a complaint seeking injunctive relief based on unfair competition was held appealable under § 1292(a) (1) even though a claim for injunctive relief under the patent laws remained undetermined.

Significant for the present appeal is the fact that, writing for the panel, Judge Friendly distinguished a series of cases, involving fact patterns the same as that presented by this appeal, in which we denied jurisdiction. Goldlawr v. Heiman, 273 F.2d 729 (2 Cir. 1959); John & Sals Automotive Service Inc. v. Jones Beach State Parkway Authority, 267 F.2d 862 (2 Cir. 1959); Cott Beverage Corp. v. Canada Dry Ginger Ale, 243 F.2d 795 (2 Cir. 1957); Porter v. American Distilling Co., Inc., 157 F.2d 1012 (2 Cir. 1946); Studer v. Moore, 153 F.2d 902 (2 Cir. 1946). Although those cases are distinguishable because the applicability of § 1292(a) (1) was not argued, Judge Friendly indicated that a result reached in a multiple-defendant case was not controlling in a multiple-claim case. 276 F.2d at 546.

Judge Clark dissented from a denial of an Application for a Rehearing *in banc,* 276 F.2d at 549, and he argued that before § 1292(a) (1) could be invoked, the order must completely dispose of a claim for relief or cause of action[7] and not dispose merely of one theory in support of the requested relief. Disagreeing sharply with Judge Friendly on the applicability of Goldlawr et al., *supra,* Judge Clark argued that the effect of the majority's decision was to overrule those cases, 276 F.2d at 551, because under the majority's reasoning jurisdiction

---

6. The rejection of this argument apparently disregards the emphasis of at least one commentator that in a multiple claim case an order of the district court that *fully adjudicates* a claim for injunctive relief is appealable under § 1292(a) (1). 6 Moore's Federal Practice ¶ 54.30 [2] at 232–234.

7. Judge Clark defined the claim for relief or cause of action in terms of the "operative facts giving rise to an enforceable right, and not * * * legal theories. * * *" 276 F.2d at 550. Under Judge Clark's analysis, Telechron, Inc. v. Parissi, *supra,* involved two separate claims for injunctive relief. *Id.* at 551.

over them should have been sustained under § 1292(a) (1), presumably on the ground that the failure to dispose completely of a claim for relief is not fatal to § 1292(a) (1) jurisdiction.

To the extent that the *New Haven* case does, as Judge Clark thought, stand for a general disregard of the requirement that the order completely dispose of a claim for relief before it is appealable under § 1292(a) (1), the continued vitality of that holding is rendered doubtful by our overruling of the proposition upon which Judge Friendly placed primary reliance. In Chappell & Co. v. Frankel, 367 F.2d 197 (2 Cir. 1966) (*en banc*), we overruled Federal Glass Co. v. Loshin, *supra*, and Raylite Electric Corp. v. Noma Electric Corp., *supra*, and held that a denial of plaintiffs' motion for summary judgment in an action seeking injunctive relief is not appealable under § 1292(a) (1). Specifically referring to the *New Haven* case, among others, we stated, "as our result here is inconsistent with the result reached in the above cases we are reversing the rule set forth therein * * *." 367 F.2d at 200. See also Quirke v. Norfolk & Western Railway Co., 367 F.2d 864 (2 Cir. 1966).

Moreover, whatever life still remains in the rule established in the *New Haven* case must be interpreted in light of McMillan v. Board of Education, *supra*, in which another panel of this court, Judge Friendly writing the opinion, reached a result in conflict with that announced here by the majority. There, a civil rights action was brought against (1) the Board of Education of New York City, (2) the City's Superintendent of Schools, (3) the City's Director of Education for the Physically Handicapped, (4) the New York State Department of Education and (5) the State Commissioner of Education, on behalf of three handicapped children, to declare unconstitutional the $2000 per pupil limitation on amounts to be spent for the private teaching of brain-damaged children, § 4407, New York Education Law, McKinney's Consol.Laws, c. 16. The complaint requested temporary and permanent injunctions to prohibit the State defendants from enforcing the limitation and injunctions requiring the three City defendants to provide adequate classes for handicapped pupils. The district court declined plaintiffs' request for a three-judge district court on the ground that the constitutional claim against the State defendants was insubstantial and dismissed the action as to them. As is the case in the present appeal, no order was entered pursuant to Rule 54(b). The court held that § 1292(a) (1) did not provide jurisdiction over the appeal, as the appeal was not an *interlocutory* order, and that because a Rule 54(b) order was not entered, the order was not final due to the continued pendency of the action against the City defendants. 430 F.2d at 1148. The court did assume jurisdiction, however, to review the order as one denying a three-judge court.

I am not persuaded that the characterization of the order in *McMillan* as non-interlocutory is sound,[8] but the result there reached is not consistent with the majority's herein. If no jurisdiction existed over the appeal in *McMillan* where the severance of the State defendants precluded any possibility of having the State statute establishing the $2000 limitation declared unconstitutional, then clearly, jurisdiction must be denied over the present appeal. Compelling policy reasons support such a result.

The liability of the Mayor, the Chief of Police and the Department of Human Relations of Buffalo is derivative of the liability of the individual police officers.

---

8. The fact that the action remains undetermined as to other defendants would appear to render the order no less interlocutory than the pendency of other undetermined claims renders an order completely disposing of one claim for injunctive relief. The latter order is consistently treated as an interlocutory order. 6 Moore's Federal Practice ¶ 54.30 [2], at 234.

Dismissing the action as to these three defendants did not affect the action as to the remaining defendants, and no argument has been presented that the dismissal affected the quality of the relief prayed for by the plaintiffs. As such, the present appeal is distinguishable from those cases, like *Marvel*, sustaining jurisdiction over the dismissal of a separate action for injunctive relief in a multiple claim case, because there the district court's determination operated as a complete adjudication of the claim. The order was properly characterized, therefore, as a denial of injunctive relief, because the court's action completely foreclosed that avenue of relief. Here, however, the order merely held that if any injunctive relief is ultimately obtained, it may not run against the appellees herein.

Moreover, an important policy consideration points up the difference between the multiple-claim and multiple-defendant case, because, in the latter, where the liability of the defendants is derivative and joint, the adjudication of piecemeal appeals involving some but not all the defendants may operate to determine issues common to all the defendants without a corresponding opportunity for all the defendants to participate in that determination. Zangardi v. Tobriner, 116 U.S.App.D.C. 350, 330 F.2d 224 (1964); Robbin v. American University, 117 U.S. App.D.C. 351, 330 F.2d 225 (1964). Under these circumstances it is unwise to stretch the meaning of § 1292(a) (1) to include as the denial of an injunction an order which merely holds that the requested injunctive relief may not run against some of the defendants.[9] Rather, jurisdiction should be denied unless it can be shown that for all practical purposes the dismissal of these defendants effectively terminates the litigation or that it fully nullifies any potential injunctive relief by contracting the scope of the injunctive relief originally sought. Spangler v. United States, 415 F.2d 1242 (9 Cir. 1969). Both approaches are familiar analytical concepts; the former has been utilized in this Circuit to determine whether the dismissal of the class action aspect of a complaint is appealable under the collateral order doctrine,[10] Caceres v. International Air Transportation Association, 422 F.2d 141 (2 Cir. 1970); City of New York v. International Pipe and Ceramics Corp., 410 F.2d 295 (2 Cir. 1969); Eisen v. Carlisle & Jacquelin, 370 F.2d 119 (2 Cir. 1966), cert. denied, 386 U.S. 1035, 87 S.Ct. 1487, 18 L.Ed.2d 598 (1967); Weingartner v. Union Oil Company of California, 431 F.2d 26 (9 Cir. 1970), and the latter has been utilized by the Fourth Circuit to determine whether the same question is appealable under § 1292 (a) (1) as a denial of injunctive relief. Brunson v. Board of Trustees, 311 F.2d 107 (4 Cir. 1962), cert. denied, 373 U.S. 933, 83 S.Ct. 1538, 10 L.Ed.2d 690 (1963); see Note, Interlocutory Appeal From Orders Striking Class Action Allegations, 70 Colum.L.Rev. 1292, 1297 (1970). Such an approach to the question of the appealability of orders like the one before us would provide the needed flexibility to deny jurisdiction where the order, as in this case, will not cause serious injury to the plaintiffs by effectively terminating the action but would, on the other hand, deprive the remaining defendants of the opportunity to be heard on issues that may work a collateral estoppel effect against them. Zangardi v. Tobriner, *supra*; Robbin v.

9. Because § 1292(a) (1) provides a limited exception to the general policy against piecemeal appeals as expressed by the rule that only final orders of the district courts are subject to review, 28 U.S.C. § 1291, it should be construed with some strictness. Switzerland Cheese Association, Inc. v. E. Horne's Market, Inc., 351 F.2d 552 (1 Cir. 1965), aff'd, 385 U.S. 23, 87 S.Ct. 193, 17 L.Ed.2d 23 (1966). See also Goldstein v. Cox, 396 U.S. 471, 478, 90 S.Ct. 671, 24 L.Ed.2d 663 (1970).

10. Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

American University, *supra.* In Tracy v. Robbins, *supra,* the Fourth Circuit apparently adopted this test, and in Spangler v. United States, *supra,* the Ninth Circuit also made use of it.

It is clear, however, that the district court's dismissal as to the appellees herein did not sound the "death knell" of the action. The action remained pending as to the individual police officers, and complete relief could have been had against them.

In their supplemental papers, appellants argue that the district court's subsequent action as to the individual officers disposes of the uncertainty surrounding our jurisdiction over the appeal and makes it clear that jurisdiction may be based on Rule 54(b). As stated earlier, however, the district court made no attempt to enter the order in accordance with Rule 54(b), and the subsequent action is of no moment in determining whether § 1292(a) (1) provides jurisdiction. In its latest order, the district court severed the organizational plaintiffs as not properly representative and dismissed the class action aspect of the complaint, letting stand the actions by individual plaintiffs against the individual officers for violations of their civil rights.[11] This order itself presents serious questions of appealability, Eisen v. Carlisle & Jacquelin, *supra,* and no coherent argument has been presented that explains how this subsequent order can affect the appealability of the order now before us.

I would dismiss the appeal for lack of statutory jurisdiction.

---

11. Judge Henderson's second order, entered on January 22, 1971, does, however, point up the undesirability of reviewing, at this stage, the earlier order, because in the last paragraph of the order he indicates that the individual plaintiffs are now free to prosecute individual actions against the individual officers *and their responsible superiors.* As there was no opinion written as to the first order, this latter determination suggests that the motion to dismiss as against the Mayor, Chief of Police and Department of Human Relations was granted as to the class action aspect of the complaint alone, not for failure to state a claim as the order purports to do. The unraveling of such confusion as exists would better await a time when the posture of the case before this court permits a treatment of the entire case.