Ross **DANIELSON** et al., **Plaintiffs,**

v.

**BOARD OF HIGHER EDUCA-TION** et al., **Defendants.**

No. 71 Civ. 2985.

United States District Court,
S. D. New York.

April 12, 1972.

Nancy Stearns, Center for Constitutional Rights, Veronika Kraft, New York City, for plaintiffs.

J. Lee Rankin, Corp. Counsel, City of New York, by Yvette Harmon, Asst. Corp. Counsel, New York City, for defendants.

MOTLEY, District Judge.

*Opinion on Motion to Dismiss
and for Summary Judgment*

This is an action by Ross Danielson, a lecturer in sociology at City College, a branch of the City University of New York. Mr. Danielson's challenge is to the constitutionality of defendants' maternity leave provision on its face and as applied. The essence of Danielson's claim is that women faculty members are permitted to take a leave of absence in connection with pregnancy, up to three semesters, for the purpose, among others, of caring for a new born infant, without adversely affecting their tenure rights, but the same child care leave privilege is denied to men.

This action is also brought by Mr. Danielson's wife, Susan Danielson, who is a lecturer in English at Lehman College, another branch of the City University of New York. Her challenge is to the constitutionality of defendants' refusal to treat her 12-day leave, during which she gave birth to a child, as sick leave.

Defendants are the Board of Higher Education which governs the City University of New York, the chairman of that Board, the chancellor of the University, the president of City College, and the dean of faculties of Lehman College.

Jurisdiction is predicated upon 28 U. S.C. §§ 1331 and 1343. Declaratory and injunctive relief are sought. Ross Danielson seeks a declaration that the maternity leave provision is unconstitutional on its face and as applied to male faculty members. He also seeks an injunction enjoining defendants from discharging him or otherwise penalizing him for having taken child-care leave. Mrs. Danielson seeks a declaratory judgment that defendants' actions in withholding her pay for the period December 8 through 23, 1970 deprived her of her property in violation of the Fourteenth Amendment. She also seeks an award of her back pay in the amount of $180, plus interest.

The action is presently before the court on the motion of plaintiffs for summary judgment in their favor and the motion of defendants to dismiss or, alternatively, for summary judgment in their favor. Defendants have moved to dismiss the complaint on two grounds: 1) the court lacks jurisdiction of the subject matter and, 2) the complaint fails to state a claim upon which relief may be granted. For the reasons set forth below, the motion to dismiss is denied. The motions for summary judgment are also denied on the ground that there are several disputed issues of fact.

Mr. Danielson commenced teaching in the City College in the fall semester of 1969. His wife, Susan Danielson, who was teaching at Lehman College at the same time became pregnant in the early spring of 1970. Upon discovering her pregnancy, Susan and her husband discussed the matter at great length. They weighed the options available to them with respect to the care of their child and the pursuit of their respective careers. They decided that Susan would continue her teaching duties throughout her pregnancy and after childbirth. Then, for at least the first six months after the child was born, Mr. Danielson would stay home and assume the primary responsibility for the care of their infant. Susan Danielson consulted her physician who assured her that such conduct on her part would in no way be injurious to her health.

Mr. Danielson then made every effort to obtain "parental leave of absence" from City College. He claims such "parental leave" is available for women faculty members pursuant to Article XIII, Section 13.4, of the By-Laws of the Board of Higher Education and should be equally available to men.

This section provides in pertinent part as follows:

*Maternity Leave.* a. As soon as a member of the instructional staff shall become aware of her pregnancy, she shall forthwith notify the president and *may* apply for a leave of ab-

sence. Such leave shall begin on February 1 or September 1, unless the conditions of the pregnancy require that the leave begin sooner. The duration of the leave shall be at least one full semester. In exceptional cases, if approved by the college physician, the president may terminate a maternity leave during a college term, provided there is an appropriate opening in which the applicant's service may be utilized. An extension of maternity leave shall be permitted on request for a period not in excess of one year from the end of the original leave. No further extentions (sic) shall be permitted.

b. Maternity leaves shall be granted without pay during the period of the leave, including the vacation period concomitant to the leave. If the leave is for one semester only, the loss of paid vacation shall be for one month only. If the leave is for two semesters, both months of vacation shall be without pay. If the duration of a maternity leave is one year or more, it shall not be credited towards salary increments. (emphasis added.)

It is agreed that women are not compelled by this section to take maternity leave. This case is therefore unlike the companion case of Monell v. Department of Social Services, D.C., 357 F.Supp. 1051, decided this same date, involving the constitutionality of New York City agency regulations which allegedly compel women to take a maternity leave at the end of the seventh month of pregnancy.

Mr. Danielson applied for a leave of absence for the spring semester of 1971, by letter dated October 5, 1970, to the acting chairman of his department. In that letter he stated as follows:

"The purpose of my leave of absence would be two-fold: 1) to care for a new baby and, 2) engage in serious work on a PHD."

(Complaint, Appendix B.)

The acting chairman rejected the requested leave of absence by letter dated October 28, 1970. He stated: " . . . there is no provision for a 'leave of absence' (for any reason) for persons who do not have tenure." The acting chairman also advised Mr. Danielson that his letter of October 5 amounted to a resignation as of January 31, 1971. (Complaint, Appendix C.) On November 10, 1970, Mr. Danielson applied for "maternity leave of absence" to the president of City College. He submitted the appropriate form under Section 13.4 with a letter stating his reasons for the requested maternity leave.

In that letter Mr. Danielson stated: "Men should have the same rights as women to care for young infants, especially where the mother chooses to work full time (as is true in my case.) If a husband is not entitled to a leave of absence, then the mother is virtually forced to take a leave of absence and hence the woman's maternity leave is rendered less a right than an obligation, contrary to the spirit, as I see it, of the maternity leave provisions and of various interpretations of equal rights legislation and constitutional guarantees. If not granted a leave of absence, a husband who wishes to care for a young infant must suffer greater hardship (such as termination of employment and loss, even with reappointment, of certain contract provisions, tenure credits, etc.) than a woman who may take a leave of absence; therefore the non-application of the maternity leave provision to men is unfair to men and tends to keep women in the home where they are *burdened* with the traditional child-care role in order to secure the employment of the husband. There can be no equal rights for women without equal rights for men." (Complaint, Appendix D.)

On or about December 21, 1970 Mr. Danielson learned that the president's Review Committee had rejected his application without stating any reason. Mr. Danielson appealed to the chancellor of the University and the chairman of the Board of Higher Education but received no reply to his letters.

Ross Danielson took a leave during the spring 1971 semester and alleges he assumed primary responsibility for the care of his child. His wife resumed her teaching duties. His application for maternity leave was treated as a resignation. Thus, although he was rehired for the fall 1971 term, the computation of his continuous service time has been affected.

Susan Danielson, who had a right to do so, did not request the maternity leave permitted under Section 13.4. The president's office, however, sent her a form for such leave on numerous occasions. Maternity leaves which are granted under Section 13.4 are leaves without pay. If Mrs. Danielson had chosen to take maternity leave as of September 1, 1970 and had requested the one year extension, she could have remained away from her post until February 1, 1972 without loss of accrued time towards tenure requirements. It appears that no doctor's certificate in support of her request for extension would have been required. However, there is no proof one way or the other on this question. During this time away from her position, Mrs. Danielson apparently would have been free to devote all her time to the care of her newborn infant or, it appears, she could also have worked on her Ph.D. But, again, there is no firm proof one way or the other on this crucial question.

Defendants say that " . . . Ross Danielson might have obtained a leave for special purposes under Section 13.6 if he so requested, for the purpose of taking care of his child." (Defendants' Brief, p. 18.) They also assert that "If *any* parent desires to take leave solely for childrearing purposes, they must proceed under By-Law § 13.6, leave for special purposes." (*Id.* p. 24.)

Section 13.6b provides: "On the recommendation of the relevant departmental committee concerned with appointments, the relevant college committee and the president, the Board may grant to members of the instructional staff leaves of absence for special purposes

such as study, writing, research, the carrying out of a creative project or a public service of reasonable duration. Such leaves shall be *without* pay." (Emphasis added.)

Mr. Danielson was not advised of this "administrative procedure . . . available to accommodate him" prior to suit (*Id* pp. 18–19.) Such leave, of course, does affect the computation of the five years of continuous service required for tenure.

It should be noted also that defendants' statement, that *any* parent who desires leave "solely" for childrearing purposes may apply for same under Section 13.6, does not square with defendants' assertion on the same page of their brief (p. 24) which reads as follows: "Defendant's By-Law provides a mother with the option to recuperate from pregnancy. If she utilizes this leave period to also care for her child, this is her own determination." This latter statement is consistent with the former if the former refers to women who desire to take child-care leave unconnected with childbirth. Thus from reading defendants' brief, it is clear to this court that defendants have not made up their collective minds as to what their child-care leave policies really are in the face of this men's liberation request for equal treatment with women.

Consequently, summary judgment cannot be granted for either party. Not only is it unclear what defendants' policies really are, but the central fact is plainly in dispute, i. e., whether women faculty members are permitted leaves up to three semesters under Section 13.4 to care for their newborn children when there is no unusual medical disability resulting from the birth of the child and, during this period, may also do work toward a Ph.D. degree without loss of time served, as it relates to tenure.

Mrs. Danielson made arrangements with other teachers to cover her classes during her brief leave for the birth of her child. She was absent from work for 12 days, from December 8, 1970 to

December 23, 1970. She requested that her absence be credited against her allotted sick leave with pay. Instead of treating her absence as sick leave, Lehman College recorded the leave as a "special leave without pay for emergency purposes (maternity)." The special leave section, Section 13.6a, provides for special leaves for personal emergencies of not more than 10 working days *with pay* at the discretion of the president. Despite the express terms of this provision, Mrs. Danielson was not paid.

■ Again it is clear defendants were confused about their own policy. Mrs. Danielson's claim that the leave which she took should be treated as any other illness is disputed by defendants on the ground that pregnancy is not an illness. With respect to Mrs. Danielson's claim we thus have another central disputed issue of fact, i. e., whether the period immediately following childbirth unattended by other complications is a medical disability or illness for which a woman is entitled to sick leave. Mrs. Danielson's claim for sick leave pay is a claim which has been previously recognized by a federal court, Cohen v. Chesterfield County School Board, 326 F. Supp. 1159 (E.D.Va.1971), and has been bolstered by recently adopted Rules and Regulations of the Equal Employment Opportunity Commission. 37 Fed.Reg. 6837 (April 5, 1972).[1]

■ On this motion to dismiss it is only necessary to determine whether Mr. and Mrs. Danielson's allegations raise "colorable" constitutional claims. Roberson v. Harder, 440 F.2d 687 (2d Cir. 1971); Campagnuolo v. Harder, 440 F. 2d 1225 (2d Cir. 1971); Johnson v. Harder, 438 F.2d 7 (2d Cir. 1971).

■ Mr. Danielson's primary claim is that his right to equal protection of the laws has been violated by defendants' refusal to extend to him the same child-care leave privilege which they extend to women solely because he is a man. He claims that by so discriminating against men who seek to fully participate in the care of their children, defendants are effectively denying men the right to play a full and equal role in their families. He then argues that the fact that child care has traditionally been considered women's work is no more an answer here than were the use of such sex stereotypes in an attempt to bar women from certain kinds of employment. Sail'ers Inn. Inc. v. Kirby, 5 Cal.3d 1, 95 Cal.Rptr. 329, 485 P.2d 529 (1971) (invalidating state ban on female bartenders); Weeks v. Southern Bell Telephone & Telegraph Co., 408 F.2d 228 (5th Cir. 1969) (invalidating ban on women as telephone switchmen); Bowe v. Colgate-Palmolive Co., 416 F.2d 711 (7th Cir. 1969) (invalidating ban on women in jobs requiring the lifting of weights). He also argues that he and other men are perfectly capable of caring for infant children and have a right to elect to do so without arbitrary interference with this choice by the state.

Very recently, the Supreme Court ruled that a state may not arbitrarily prefer men over women similarly situated in determining appointments to positions of administrator of decedent's estates. Reed v. Reed, 404 U.S. 71, 92 S. Ct. 251, 30 L.Ed.2d 225 (1971). There the Court ruled that where the state provides that different treatment be accorded to persons similarly situated, such a classification is subject to scrutiny under the equal protection clause. The Court held that a classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced

1. This regulation provides in pertinent part as follows:
   § 1604.10(b) "Disabilities caused or contributed to by pregnancy, miscarriage, abortion, childbirth, *and recovery therefrom* are, for all job-related purposes, temporary disabilities and should be treated as such under any health or temporary disability insurance or sick leave plan available in connection with employment." (Emphasis added)

shall be treated alike. If upon a trial it is proved that the purpose of Section 13.4 leave is to give women an opportunity to care for infant children, and since it is not claimed that Mr. Danielson is incapable of such child care, then Mr. Danielson would have presented at least a "colorable" constitutional claim. Whether he will succeed with his claim is another matter not here decided.

Even more recently the Supreme Court in Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), held that an Illinois dependency statute that presumes parental unfitness of unwed fathers by excluding them from the definition of parents and which thereby deprives them of custody of their children without a hearing on their fitness accorded to all other parents violates both the equal protection and due process clauses of the Fourteenth Amendment.

Moreover, in determining the precise nature of the private interest there affected by governmental action the Court said:

"The private interest here, that a man has in the children he has sired and raised, undeniably warrants deference and, absent a powerful countervailing interest, protection. It is plain that the interest of a parent in companionship, care, custody, and management of his or her children 'come[s] to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangement. . . .

"The Court has frequently emphasized the importance of the family. The rights to conceive and to raise one's children have been deemed 'essential' . . . 'basic civil rights of man' . . . and '[r]ights far more precious . . . than property rights'. . . . 'It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.' . . . .

The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment . . . the Equal Protection Clause of the Fourteenth Amendment . . ., and the Ninth Amendment, . . . ."

Here plaintiffs also rely on the right of personal liberty guaranteed by the due process clause of the Fourteenth Amendment as well as a claimed invasion of their right to privacy under the Ninth Amendment.

■ The complaint, therefore, cannot be dismissed as to either plaintiff for failure to state a claim upon which relief may be granted. It is only when it appears that plaintiffs could prove no set of facts in support of their claim which would entitle them to relief that a motion to dismiss for failure to state a claim must be granted. Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Jenkins v. McKeithen, 395 U.S. 411, 421–422, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); Build of Buffalo, Inc. v. Sedita, 441 F.2d 284, 287 (2d Cir. 1971). "Particularly when an action is brought under the Civil Rights Act, we are chary of permitting dismissal where plaintiffs might obtain relief on facts suggested, but inarticulately stated, by the complaint." United States ex rel. Hyde v. McGinnis, 429 F.2d 864, 865 (2d Cir. 1970).

Defendants asserted that plaintiffs' claims amount to little more than that they have been or are about to be deprived of the "profits or emoluments" derived from their employment and since this court is without jurisdiction under the Civil Rights Acts of a claim of infringement of personal liberty which is predicated upon a property right, the complaint must be dismissed. In moving to dismiss on the ground that the court is without jurisdiction under the civil rights statutes, 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3), defendants relied upon the Second Circuit decision in Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969) which was recently overruled by the Supreme Court in Lynch v.

Household Finance Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972). There the Court held that it had never adopted the Second Circuit's distinction between property rights and personal liberties for the purpose of determining § 1343(3) jurisdiction, and expressly rejected it.

For all of the foregoing reasons, the motions for summary judgment and to dismiss are denied.

Submit order on 5 days' notice.