**H.H. ROBERTSON COMPANY, Plaintiff,**

v.

**BARGAR METAL FABRICATING CO., et al., Defendants.**

**No. C80–1166.**

United States District Court, N.D. Ohio, E.D.

Jan. 15, 1987.

Paul A. Weick, Weick & Gibson, Cuyahoga Falls, Ohio, Arland T. Stein, Frederick H. Colen, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for plaintiff.

Stephen A. Hill, Pearne, Gordon, Sessions, McCoy & Granger, Cleveland, Ohio, Ernest I. Gifford, Gifford, Vanophem, Sheridan, Sprinkle, & Nabozny, Birmingham, Mich., Mark C. Pierce, Pierce & Pierce, W. Bloomfield, Mich., for defendants.

## MEMORANDUM OPINION

DOWD, District Judge.

### INTRODUCTION

By virtue of the plaintiff's objections to the August 22, 1986 report and recommendation of Magistrate Charles Laurie, the Court has before it for resolution the issue of the extent to which an intervening defendant in a patent action may be subjected to discovery in the accounting phase of the litigation to determine if the intervenor is engaging in infringement conduct for which it is liable in damages in a case where the original defendant, but not the intervenor, has been found to have infringed upon the plaintiff's valid patent.

The Court has concluded that the issue is novel in that no precedent is cited by either the plaintiff or the intervenor which is dispositive of the issue.

### HISTORY OF THE CASE

This action involves U.S. Patent No. 3,721,051 issued to Frank W. Fork (Fork patent) on March 20, 1973. The Fork patent, which has since been assigned to H.H. Robertson Company (Robertson), teaches a bottomless sub-assembly for producing an under-floor electrical cable trench. The structure is used in commercial buildings to provide a ubiquitous and flexible system for distributing electrical power and communication cables throughout the floors in the building.

The plaintiff, Robertson, is a Pennsylvania corporation with its principal place of business at Pittsburgh, Pennsylvania. Robertson has long been a leader in developing electrified floor structures for commercial buildings and has marketed a series of structures over the years. Robertson is the owner of the Fork patent as Fork's assignee.

The original defendant in this action, Bargar Metal Fabricating Company (Bargar), is an Ohio corporation having its principal place of business at Cleveland, Ohio. Bargar's Conduflor Division manufactured and sold the products alleged to infringe upon the Fork patent. On June 8, 1983, Bargar filed for protection under Chapter XI of the Bankruptcy Act in the United States District Court for the Northern District of Ohio. The automatic stay provisions of § 362 of the Bankruptcy Code were modified by an October 2, 1983, Court order to allow Robertson to prosecute this action.

On December 1, 1983, Conduflor Corporation (Conduflor) purchased the assets of Bargar's Conduflor Division from the bankruptcy trustee.[1] The bankruptcy court approved the sale and Conduflor became the owner of the goodwill and other business assets of the Bargar Conduflor Division. At the time of the sale, Conduflor knew of this pending lawsuit.

Conduflor is a Michigan Corporation with a place of business at the premises of Bargar in Cleveland, Ohio. Conduflor is completely separate from Bargar and has different shareholders, directors, and officers. On January 25, 1984, the Court granted Conduflor leave to intervene as a party to this action.

The case with respect to the issue of validity of patent '051 was tried before the

---

**1.** At the time of the sale, Conduflor was known as Powerline Products, Inc. Since that time, the company has changed its name to Conduflor.

The name change is not material to resolution of the issues presented in this lawsuit.

Court in a bench trial on March 1 through March 7, 1984. Following a briefing schedule, the Court published a 63–page Memorandum Opinion on November 20, 1984 finding that the Fork patent was valid and infringed by Bargar's conduct.

The Court referred to Conduflor in relevant portions of the memorandum opinion of November 20, 1984 as follows:

at page 3,

The bankruptcy court approved the sale and Conduflor became the owner of the goodwill and other business assets of the Bargar Conduflor Division. At the time of the sale, Conduflor knew of this pending lawsuit.

Conduflor is a Michigan Corporation with a place of business at the premises of Bargar in Cleveland, Ohio. Conduflor is completely separate from Bargar and has different shareholders, directors, and officers. On January 25, 1984, the Court granted Conduflor leave to intervene as a party to this action.

Bargar engaged in all of the conduct giving rise to this action. Nonetheless, Conduflor took an active role in the trial of this matter. For purposes of this opinion, when the Court refers to the conduct of the defendants, the Court will refer to Bargar's conduct. When the Court refers to the contentions raised by the parties, the Court's references will be to the defendants....

at page 57,

... A review of the pleadings in this case indicates that Robertson has not made any claims of infringement or contributory infringement against Conduflor. Conduflor's liability, if any, arises solely as the owner of the former Bargar Conduflor division.

The parties have devoted considerable attention to the effect of the Sixth Circuit's decision in *Vulcan, Inc. v. Fordees Corp.*, 658 F.2d 1106 (6th Cir.1981), *cert. denied* 456 U.S. 908, 102 S.Ct. 1752, 72 L.Ed.2d 162 (1982). In that case, the Court held a successor in interest bound by doctrines of *res judicata* to a prior entry of judgment against its successor on patent validity and infringement issues. Under *Vulcan,* a successor in interest is bound by any judgment entered against its predecessor holding a patent valid or infringed. As this case does not involve an effort by the patent holder to bind Conduflor by a previous judgment entered against Bargar, the Court has no occasion to comment upon the question of whether the *Vulcan* decision precludes Conduflor from ever again challenging the validity of the Fork patent or the question of whether the accused structures infringe upon the patent.

A more difficult issue is whether this Court should enter judgment against Conduflor, as well as against Bargar. As noted earlier, the *Vulcan* decision does not control this issue. As the parties have not briefed the question in any other context, the Court will defer decision on this issue until a later date....

at page 62,

For the foregoing reasons, the Court concludes that the Fork patent is valid and infringed by Bargar's conduct. Further, the Court concludes that judgment should be entered in favor of Robertson and against the defendants on the counterclaim....

By its order published on October 10, 1985, the Court reviewing the status of the case and the objection of Conduflor to discovery by the plaintiff with respect to Conduflor's alleged infringement or contributory infringement declared as follows:

In the Court's view, Conduflor is bound by the Court's determination that the plaintiff's patent is valid and that it was infringed by Bargar. Conduflor participated in the trial as an intervening party in which those decisions were reached by the Court. By the act of intervention in this case, Conduflor is also liable in this action for any infringements of the plaintiff's patent in which it engaged. *See Holstensson v. Webcor, Inc.*, 150 F.Supp. 441, 448 (N.D.Ill.1957).

To summarize, it is evident that the issue of infringement by Conduflor as the purchaser of the business of Bargar was not before the Court when the trial on the issue of patent validity and in-

fringement was tried to the Court in March of 1984. On the other hand, the contested issues of patent validity and infringement by Bargar were actively defended by counsel for Conduflor who appeared as an intervening defendant.

The Court is now ready to proceed to the damage aspect of this bifurcated proceeding. In that proceeding the plaintiff wishes the Court to reopen discovery so it may prepare and present its damage case. In this case, it appears to the Court that the damage phase may require adjudications as to whether Conduflor engaged in infringement practices, as a predicate to assessing damages, if any, against Conduflor.

The Court will vacate its stay of discovery in this case and grant the parties a period of four months for discovery until February 14, 1986. The next status call in this case is hereby scheduled for January 24, 1986, at Noon so that counsel can advise the Court on discovery progress and discuss any problems that may have developed in the interim.

Discovery on the issue of damages was reopened. Disputes with respect to discovery developed. On June 9, 1986, the Court referred this case to Magistrate Charles Laurie for his supervision with respect to discovery. The discovery disputes before Magistrate Laurie have focused on the question initially framed by the Court in this memorandum opinion. The Court presently has for its consideration the objections filed by the plaintiff to the report and recommendation of Magistrate Laurie filed with the Court on August 22, 1986 in which he recommends that the Order of July 21, 1986 regarding discovery disputes be approved. Specifically, Magistrate Laurie has ruled with Conduflor and Bargar with respect to Robertson's inquiries by way of interrogatories and requests for a production of documents involving semi-bottomless, selective access, series 4900, intermittent bottomless, and open-bottom electrical cable trench.

·After receiving the Magistrate's report and recommendation on August 22, the Court published an order on October 10, 1986 one year to the day after the October 10, 1985 order in which it stated:

The Court is ... concerned that its citation of *Holstensson v. Webcor, Inc.*, 150 F.Supp. 441, 448 (N.D.Ill.1957), in support of the proposition that CONDUFLOR by its act of intervention in this case is also liable for any infringements of the plaintiff's patent in which it engaged, is not well taken.

The Court recognizes that its order of October 10, 1985 states "... it appears to the Court that the damage phase may require adjudications as to whether CONDUFLOR engaged in infringement practices, as a predicate to assessing damages, if any, against CONDUFLOR." However, the Court is concerned that it may have inappropriately permitted the plaintiff to prosecute a second infringement action against CONDUFLOR without any predicate claim of infringement, and thereby allowing the plaintiff to engage in discovery to determine if it can find the predicate act. Magistrate Laurie's report and recommendation would appear to prohibit such an exercise. However, the Court's prior rulings would suggest that such an exercise is permissible, specifically the Court's order of October 10, 1985.

The Court is of the view that oral arguments with regard to the issues raised by the objections to Magistrate Laurie's report and recommendation and this order are necessary.

Subsequently, the Court heard oral arguments and has received additional briefs. The transcript of the oral argument has also been filed (Docket # 413).

## POSITION OF THE PLAINTIFF

The plaintiff's position with respect to its right to broad discovery with respect to Conduflor's action is based upon the following argument.

1. By intervening, Conduflor agreed to have its liability for infringement decided.[2]

---

**2.** Plaintiff cites paragraphs 15 and 19 of the

Intervenor's initial pleading which stated:

2. A patent holder need show only one infringement prior to bringing action in order to recover damages.

3. Conduflor is bound to the judgment as a successor in interest whether or not it is a named party a subsequent judgment is not necessary to bind it to the determination of patentability, infringement. *See Kloster Speedsteel AB v. Crucible Inc.,* 793 F.2d 1565 (Fed.Cir.1986).

4. In any event, as an intervenor, Conduflor, because it participated in the challenge to the Fork patent and argued that there was no infringement, is bound to the judgment the same as an original party.

5. Once the Court has determined an infringement exists, damages are allowable from a period commencing six years prior to the commencement of the action to the conclusion of the determination of damages. *See Ushakoff v. United States,* 375 F.2d 822, 823 (1967).

6. Modified structures that infringe the patent, but come into existence or being after the filing of the complaint are proper subjects of inquiry on the damage phase as a part of determining the extent of the damages. *See The Devex Corp. v. General Motors* litigation.[3]

7. A party which intervenes in litigation becomes a full participant in a law suit and as such is treated as if it were an original party defendant. *District of Columbia v. Merit Systems Protection Bd,* 762 F.2d 129, 132 (1985); *United States v. Oregon,* 657 F.2d 1009, 1014–15 (9th Cir.1981); *Marcaida v. Rascoe,* 569 F.2d 828, 831 (5th Cir.1978); *Securities Industry,* 628 F.Supp. at 1440.

8. Courts prefer to settle all issues of patent validity and infringement between an intervenor and the original parties in one form and in one suit. *Stewart Warner Corp. v. Westinghouse Electric Corp.,* 325 F.2d 822, 827 (2d Cir.1963).

## POSITION OF THE INTERVENOR

Conduflor points to the fact that no finding of infringement was made against it nor was there any claim by the plaintiff that it was engaged in infringement conduct. Conduflor intervened to protect the right to be a potential manufacturer of bottomless trench. Conduflor asserts that it had not actually engaged in any manufacture and there was no claim that it had engaged in the manufacture of any infringing item. Conduflor's purpose in intervention was to prevent a default judgment against Bargar from ripening into an injunction against Conduflor Corporation. Conduflor points to the fact that the plaintiff did not seek to bring Conduflor into the action and actually opposed the intervention. Conduflor points to the cross-examination of plaintiff's expert witness Mr. Manias, where the following colloquy appears:

Q: Mr. Manias, the plaintiff's exhibit 2, 3, 4 which you have testified from rather extensively Friday and this morning, do you find—did you find any sales of bottomless trench by Conduflor Corporation as opposed to Bargar Metal Fabricator? Do you understand my question?

A: Yes and no, I did not.

Conduflor points out that despite its opposition to the plaintiff's request to engage in discovery of Conduflor's activity to determine whether they could prove infringement, the Court has allowed such discovery. Conduflor asserts that during the discovery to date the plaintiff has copied all of Conduflor's files with respect to the bottomless trench but still has not been able to prove any infringement since all sales of bottomless trench by Conduflor Corporation were made through ROLL

15. Defendant Conduflor has acquired certain assets of defendant Bargar, *including the rights to make the products which plaintiff alleges is an infringement of its patent.*
19. *Since Defendant Bargar has not committed any acts of infringement then Defendant Conduflor will not commit any acts of infringement when it manufacturers the product line it has acquired from Defendant Bargar.*

3. *Devex Corp. v. General Motors,* 275 F.Supp. 310 (Del.1967); *Devex Corp. v. General Motors,* 285 F.Supp. 109 (Del.1968); *Devex Corp. v. General Motors,* 316 F.Supp. 1376 (Del.1970); *Devex Corp. v. General Motors,* 494 F.Supp. 1369 aff'd 667 F.2d 347 (3rd Cir.1981) aff'd 461 U.S. 648, 103 S.Ct. 2058, 76 L.Ed.2d 211 (1982).

FORM or its authorized agents and are covered by the ROLL FORM license agreement. However, Conduflor asserts that plaintiff exceeded in its "real goal which was to obtain full information regarding Conduflor's financial position, contracts and expenses." Conduflor asserts that it "continues to lose money as a result of plaintiff's relentless efforts to drive it out of business and there should be no mistake that this is the true meaning of the plaintiff in this case." Conduflor further asserts that although for a short time following the purchase, Conduflor leased premises from Bargar and even that relationship has terminated and Conduflor's operations have been moved to Michigan. Conduflor contends that where there is no proof of any predicate active infringement by the intervenor, discovery beyond that which the Magistrate has allowed should be foreclosed. In sum, Conduflor asserts that Magistrate Laurie's report and recommendation should be approved.

Conduflor contends that this action as against it should be dismissed and that Conduflor should be relieved of the injunction previously granted by the Court in which Conduflor is enjoined from infringing the Fork patent.

## THE MAGISTRATE'S REPORT AND RECOMMENDATION

On July 21, 1986 Magistrate Laurie published a 26–page memorandum, opinion and order with respect to the plaintiff's motion to compel answers to interrogatories. Thereafter, objections were filed with the Magistrate challenging the July 21, 1986 order. This challenge led to the Magistrate's report and recommendation of August 22, 1986. The Magistrate's report and recommendation then led to the Court's order of October 10, 1986 which has previously been described. The heart of the Magistrate's memorandum, opinion and order of July 21, 1986, to which the plaintiff takes objection, is found at pages 8—12.[4]

In sum, the Magistrate's memorandum, opinion and order of July 21, 1986 answers the critical question posed by the Court in the introduction to this opinion by limiting, but not prohibiting, damage discovery by the patent holder.

## THE COURT'S RULING

Resolution of the issue presented by this discovery dispute and the ensuing objections to Magistrate Laurie's report and recommendation requires a balancing of competing interests.

The plaintiff is apparently of the belief that Conduflor is engaged in production of products which infringe on the teachings of the Fork patent even though they are variations of the Bargar product found to infringe. At the very least the plaintiff contends that it should be entitled to examine all of the Conduflor products to determine if a case can be made for infringement and an accounting of the damages in the damage phase of the case. Conduflor has reacted with cries of harassment and stands on the rock that no predicate act of infringement was even claimed by the plaintiff at the time of the hearing in November of 1984.

It is apparent from the companion cases being prosecuted by the plaintiff with respect to the Fork patent that the plaintiff is engaged in an aggressive campaign to protect its patent. Despite such an aggressive campaign, the plaintiff has been unable to point to the predicate of infringement on the part of Conduflor with the discovery to date.

The recent vigorously prosecuted but unsuccessful attempt[5] of Conduflor and Bargar to have this Court vacate its prior order determining the Fork patent to be valid and infringed by reason of the newly discovered prior art in the form of Patent 2,680,775 foretells of a strong appellate attack on the issues of validity and infringement as soon as the damage phase of this case is complete. In that context, the Court questions the utility of attempting to resolve all issues respecting, as of yet un-

---

**4.** *See* Appendix A for pages 8–12.

**5.** See the Court's Order of January 15, 1987 denying the motion to vacate (Docket # 421).

discovered, alleged acts of infringement by Conduflor at this point in the proceedings.

Given the fact that Conduflor intervened in the context of its recent purchase of assets of a company faced with bankruptcy and in that respect aided the creditors of the potentially bankrupted company (*i.e.*, Bargar), an order that would permit the plaintiff to continue with the discovery requested and denied by the Magistrate, absent *proof of a predicate act* of infringement by the intervenor, would have a chilling effect on acts of intervention by recent purchasers of assets of insolvent companies.

Furthermore, an order approving the Magistrate's recommendation and report does not foreclose a subsequent action by the plaintiff against Conduflor for infringement in the event the plaintiff discovers a predicate act of infringement by Conduflor.

The Court approves the report and recommendation of Magistrate Laurie and returns this case for a timely completion of the discovery so that the Court can conduct the trial on the issue of damages during the two-week period beginning June 22, 1987.

IT IS SO ORDERED.

### APPENDIX A

Conduflor and Bargar object to that portion of the interrogatory inquiring about semi-bottomless, selective access, series 4900, intermittent bottomless, and open-bottom electrical cable trench on the basis that these inquiries are irrelevant. Conduflor further objects on the basis that some of the bottomless trench was sold to Roll Form Products, Inc. or its authorized sales agents. Judge Dowd found that Plaintiff licensed Roll Form Products to practice the bottomless trench structure, and further that Roll Form Products validly sublicensed Bargar to manufacture trench components for its use. (*H.H. Robertson Co. v. Bargar Metal Fabricating Co.*, slip op. at 28–29 (N.D.Ohio November 20, 1984)). Conduflor argues that sales to Roll Form Products and its licensed agents did not infringe on Plaintiff's patent.

Plaintiff contends that Conduflor and Bargar must fully answer its inquiries on all types of electrical cable trench, because Conduflor was assigning other names to infringing bottomless electrical cable trench, and that Conduflor is untruthful in alleging that Roll Form Products had authorized sales agents within the scope of the licensing agreement.

Judge Dowd found that Plaintiff held a valid patent and that Bargar's *bottomless* floor structures infringe on this patent as follows:

In this case, Bargar produced a number of different electrified floor structures. The parties have stipulated that several of those structures are illustrative of Bargar's structures. The parties have further stipulated that the design shown by the Modesto job does not infringe upon the Fork patent.

Each job presented an electrified floor structure including metal decking and an overlying layer of concrete as described by claim 1 of the Fork patent. Each job used metal decking presenting alternating crests and troughs and including cellular raceways. Also, each job contained Bargar bottomless trench components including opposing sides, each independently anchored in the concrete layer and fixed space-apart relationship, and a cover plate spanning the distance between the opposing sides. These trench subassemblies extended transversely across the crests of the metal decking and were bottomless, exposing the upper surface of the metal decking in the regions between the sides of the trench and were exposed to view when the cover plates were removed.

The sides of the trench in each were comprised of a two-stage side consisting of a side rail positioned on top of a sub-rail which rested on the crest of the metal decking as described in claim 8 of the Fork patent. Further, all of the illustrative jobs included vertical closure means designed to prevent the ingress of concrete into the trench through the troughs as described in claims 4 and 6 of the Fork patent. Each job also contained power compartments within the trench

structure as described by claims 9, 13 and 14 of the Fork patent. Each power compartment consisted of a U-shaped channel with an open top which was closed by the cover plate and was exposed to view when the cover plate was removed.

Based on this analysis, the Court finds each of the illustrative jobs is responsive to claims 1, 4, 6, 8, 9, 13 and 14 of the Fork patent-in-suit.

*H.H. Robertson Co. v. Bargar Metal Fabricating Co.*, slip op. at 51–52.

There is no finding in Judge Dowd's opinion that semi-bottomless, selective access and other types of electrical cable trench, other than bottomless electrical cable trench, infringed on the Fork patent. The Plaintiff had its opportunity to prove the extent of the infringement on the Fork patent. The Plaintiff cites three cases to support its proposition that information concerning the other types of electrical cable trench is discoverable. The first, *Ushakoff v. United States*, 375 F.2d 822 (Ct.Cl. 1967), involved two petitions covering two separate six-year periods. The petitions were consolidated and the eight-month interim gap between the separate six-year periods was held to be a part of the compensable period for patent infringement damages. This case is not at all on point with the Plaintiff's argument. The second case, *Schlegel Mfg. Co. v. USM Corp.*, 525 F.2d 775 (6th Cir.1975), involved the violation of a consent decree by the defendant's obtaining a subsequent infringing patent. The court therein held that the consent decree was *res judicata*, could not be collaterally attacked, and that damages were recoverable from the post-decree infringing patent. However, this case is factually distinguishable because the infringing patent came into being *after* the consent decree was made. Thus, the infringing patent was nonexistent when the consent decree was negotiated and entered into the record. The third case, *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 338 F.Supp. 1240 (W.D.Mich.1972), involved violation of a court's injunction by the defendant's subsequent production of modified structures which were found to be equivalent to the original infringing structures. The other structural types had therefore, not been the subject of the earlier litigation because they were not in existence at the time of the court's order.

The Plaintiff does not demonstrate that the other types of electrical cable trench devices were nonexistent at the time of Judge Dowd's judgment orders. Thus, the Plaintiff's cases, which allegedly supported Plaintiff's position, are clearly distinguishable from the facts in the case at bar. Just because the Plaintiff has established the fact that several of the Defendants' bottomless electrical cable trench systems infringed on the Fork patent, does not mean it is "open-season" on the Defendants.

In a bifurcated patent trial, the first part is a litigation of the issues of validity and infringement, while the second part concerns a separate proceeding on the issue of damages. *See,* FED.R.CIV.PRO. 42(b); *Powerlock Systems, Inc. v. Duo-Lok, Inc.*, 54 F.R.D. 578 (E.D.Wis.1972). The Plaintiff had full opportunity to demonstrate which of Bargar's systems infringed. It is possible that after Conduflor acquired Bargar, it continued the use of these infringing systems. However, a case must have some finite boundaries to its scope. The Plaintiff cannot now add new or additional systems employed by the Defendants which were not the subject matter of the first part of their bifurcated patent proceeding. Otherwise, there could never be a final decision because new factual issues would never cease. The present lawsuit is already overburdened and this Magistrate sees absolutely no reason for the Plaintiff to multiply the issues in this lawsuit via interrogatories. Therefore, this Magistrate will not compel Conduflor or Bargar to produce business records pursuant to F.R.C.P. 33(c), other than those records which concern construction jobs on which electrical cable trench types which were shown to infringe. Thus, Conduflor's argument that data (concerning the intermittent bottomless, selective access, semi-bottomless, series 4900 and other varieties of

electrical cable trench) is irrelevant, is well taken.

Conduflor further objects on the basis that all of its sales of bottomless trench were made to Roll Form Products and its authorized sales agents, and were thus noninfringing. Plaintiff disputes Conduflor's assertion that Roll Form Products had any authorized sales agents. Judge Dowd made no finding on the issue of "authorized sales agents" of Roll Form Products. This may be a defense of Conduflor against the Plaintiff's claims of infringement on the Fork patent. However, Judge Dowd retained the issue of adjudicating Conduflor's possible infringement for the second part of this bifurcated proceeding. There has at this point been no determination of this issue of sales to Roll Form Products and its authorized sales agents. Therefore, this Magistrate cannot find revelation of a list of buildings supplied, identification of documents, etc. requested in the first and second interrogatories to be irrelevant. Relevant evidence is, after all, "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED.R.EVID. 401.